[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

#4624304547

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

David Boveri )
)
_____ )
)
Plaintiff(s), )       Case Number: 19-50226
)
v. )
ConsenSys, Inc. )
)       # FILED
)
_____ )       SEP 12 2019
)
Defendant(s). )       THOMAS G. BRUTON
               CLERK, U.S. DISTRICT COURT

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is David Boveri _____ of the

county of DeKalb _____ in the state of Illinois _____.

3. The defendant is ConsenSys, Inc. _____, whose

street address is 49 Bogart St #22 _____,

(city) New York (county) Brooklyn (state) New York (ZIP) 11206

(Defendant's telephone number) (347) – 889-5900 _____

4. The plaintiff sought employment or was employed by the defendant at (street address)

49 Bogart St #22 _____ (city) New York _____

(county) Brooklyn (state) New York (ZIP code) 11206 _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5.    The plaintiff [*check one box*]

    (a)  ☐  was denied employment by the defendant.

    (b)  ☐  was hired and is still employed by the defendant.

    (c)  ☑  was employed but is no longer employed by the defendant.

6.    The defendant discriminated against the plaintiff on or about, or beginning on or about, (month)March_____, (day)24_____, (year)2018____.

7.1   (*Choose paragraph 7.1 or 7.2, do not complete both*.)

    (a)  The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☑*has*  ☐*has not* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

        (i)  ☑ the United States Equal Employment Opportunity Commission, on or about (month)March_____ (day)12_____ (year)2019_____.

        (ii)  ☐ the Illinois Department of Human Rights, on or about (month)_____ (day)_____ (year)_____.

    (b)  If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☑ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2   The defendant is a federal governmental agency, and

    (a)  the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

    ☐ Yes (month)_____ (day)_____ (year) _____

    ☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

    (day) _____ (year) _____.

(c)    Attached is a copy of the

    (i)  Complaint of Employment Discrimination,

        ☐ Yes    ☐ No, but a copy will be filed within 14 days.

    (ii) Final Agency Decision

        ☐ Yes    ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

    (a) ☐    the United States Equal Employment Opportunity Commission has not

        issued a *Notice of Right to Sue.*

    (b) ☑    the United States Equal Employment Opportunity Commission has issued

        a *Notice of Right to Sue*, which was received by the plaintiff on

        (month) June_____ (day) 14_____ (year) 2019_____ a copy of which

        *Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's *[check only*

*those that apply]*:

    (a) ☐  Age (Age Discrimination Employment Act).

    (b) ☐  Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☑ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12. The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☐ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☑ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☑ other (specify): disparate treatment by prohibiting overtime, violating 29 CFR Subpart B, §§ 778.100 - 778.106

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

See attachment 1 for all violations pursuant to Title I of ADA, including:

42 U.S.C. § 12112(d)(3)(b), 42 U.S.C. § 12112(b)(5)(b), 29 CFR § 1630.14.

Attachment 1 also outlines violations of 29 CFR Subpart B, §§ 778.100 - 778.106.

13. The facts supporting the plaintiff's claim of discrimination are as follows:

See attachment 2 for factual allegations common to all counts.

14. **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☑ Yes ☐ No

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

    (a)   ☐  Direct the defendant to hire the plaintiff.

    (b)   ☐  Direct the defendant to re-employ the plaintiff.

    (c)   ☐  Direct the defendant to promote the plaintiff.

    (d)   ☐  Direct the defendant to reasonably accommodate the plaintiff's religion.

    (e)   ☐  Direct the defendant to reasonably accommodate the plaintiff's disabilities.

    (f)   ☑  Direct the defendant to (specify): See attachment 3 for requests of the court.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g)   ☑ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h)   ☑ Grant such other relief as the Court may find appropriate.

_____
(Plaintiff's signature)

David Boveri
_____
(Plaintiff's name)

3230 Sycamore Rd Ste #168
_____
(Plaintiff's street address)

(City) DeKalb _____ (State) IL _____ (ZIP) 60115 _____

(Plaintiff's telephone number) ( 847 ) – 461-9235 _____

Date: 9/11/19 _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

ATTACHMENT 1: Supplemental sheet for Section 11, counts

### COUNT I – Violation of Title I of the
### Americans with Disabilities Act, 42 U.S.C. §12112

11.1.    This action indicates that Mr. Boveri, who was sufficiently qualified for a full-time

position, was willfully and intentionally treated differently than an unqualified candidate who

did not have a disability.

11.2.    Mr. Boveri restates and incorporates herein by reference Paragraphs 16.1 through 16.44

below as and for Paragraph 11.2 of Count I and Paragraph 11.7 of Count II of this complaint as

if such allegations were fully set forth herein for Count I and therein for Count II.

11.3.    The facts described contradict the claims Defendant made to the EEOC that ConsenSys

did not know of Mr. Boveri's disability during his employment, indicating that Defendant could

not locate any records of his disclosure. Defendant's own claims support that ConsenSys

engaged in negligent documentation practices, violating 42 U.S.C. § 121123(d)(3)(b). Defendant

made this statement knowingly and willfully ignoring its own negligent and non-compliant HR

documentation practices, and that most or all of the individuals directly or indirectly involved

in his hiring, discrimination, and employment of Mr. Boveri were also terminated in

restructuring.

11.4.    According to the ADA, Mr. Boveri's made formal requests for accommodation[1] by

disclosing his disability, and as such, the Defendant failed to engage in the interactive process

that is mandated by Title I of the ADA[2], such that:

---

[1] *See, e.g.,* EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, http://www.eeoc.gov/policy/docs/accommodation.html (last visited Sep., 2019)

[2] *See, e.g.,* Barnett v. U.S. Air, Inc., 228 F.3d 1105 (9th Cir. 2000)

1

ATTACHMENT 1: Supplemental sheet for Section 11, counts

    a. No attempt was made by Defendant to discuss what reasonable accommodations would allow Mr. Boveri to complete the requirements of a full-time position.

    b. Upon Mr. Boveri's disclosure of his disability, the Defendant did not engage in an interactive process, including, but not limited to:

        i. Failure to formally identifying that Mr. Boveri's disclosure of disability was a formal request for accommodation

        ii. Failure to gather any information necessary to process the request

        iii. Failure to explore any reasonable accommodation options before withdrawing job offer

    c. Defendant did not document or maintain records of Mr. Boveri's disclosure

11.5.    In their position statement to the EEOC, Defendant claims that Mr. Boveri was never offered a full-time position. In the event that Mr. Boveri misconstrued pre-employment discussions for a valid job offer, the facts described above indicate that Defendant's discussion of how Mr. Boveri's medical disability impact what job he could be offered constitute pre-employment inquiry. Pre-employment inquiry about disabilities and medical problems are prohibited by 42 U.S.C. § 12112(b)(5)(b) and 29 CFR § 1630.14.

## COUNT II – Violation of The Fair Labor Standards Act
### 29 CFR Subpart B, §§ 778.100 - 778.106

11.6.    This action indicates that Mr. Boveri, who was eligible for overtime payments pursuant to 29 CFR § 778.110, was ordered by Defendant to not accurately log or claim overtime hours, such that Defendant did not pay these earned wages to Mr. Boveri and reaped unfair benefit at the expense of Mr. Boveri, the impact of which was significant and outlined in Count 1, above.

ATTACHMENT 2: Supplemental sheet for Section 12, factual allegations

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A. Background Factual Allegations

12.1.    The plaintiff, David Boveri ("Mr. Boveri") has narcolepsy, a physical impairment which substantially limits one or more of his major life activities and bodily functions including, but not limited to, sleeping and the functioning of his neurological system.

12.2.    Mr. Boveri is an individual with a disability within the meaning of the ADA who, at all times relevant, could perform the essential functions of several jobs at ConsenSys, Inc. ("Defendant" or "ConsenSys"), with or without a reasonable accommodation.

12.3.    Before and during the entirety of Mr. Boveri's employment with the Defendant, ConsenSys held a non-traditional organizational structure called decentralization, where the company had a "flat" organization without management or any explicit decision-making hierarchies. At ConsenSys, individuals were given the right to make decisions with little or no oversight, and were encouraged to work in and on the behalf of multiple departments simultaneously.

12.4.    During Mr. Boveri's tenure, this decentralized organizational structure was pushed beyond its limits of effectiveness, with more than 1,000 employees across the globe without any direct supervision or management[1].

---

[1] *See* Kaufflin, 2018: "The biggest problems at ConsenSys may have less to do with plunging crypto prices and Lubin's dwindling fortune than with his conglomerate's weird operating structure," https://www.forbes.com/sites/jeffkauflin/2018/12/05/crypto-in-crisis-billionaire-joe-lubins-ethereum-experiment-is-a-mess-how-long-will-he-prop-it-up/ Dec. 5, 2018 (Last visited Sep., 2019)

1

ATTACHMENT 2: Supplemental sheet for Section 12, factual allegations

### B. Interview with Defendant's DC Labs and Initial Job Offer

12.5.    On or about April 4, 2018, Mr. Boveri interviewed for a "remote" developer internship position at Defendant's Washington, DC, office, to work for the "DC Labs" team. He did not disclose his disability to the Defendant before or during the interview.

12.6.    On or about April 5, 2018, Mr. Boveri was told by Defendant that he would not be getting the remote internship position and that all the positions were filled by candidates who were willing to commute to the office in the D.C. office.

12.7.    On or about April 5, ConsenSys opened discussions for offering Mr. Boveri a full-time position, instead. The Defendant told Mr. Boveri that he was over-qualified for the internship position, given his PhD and experience in computer science research.

12.8.    On or about April 12, 2018, ConsenSys offered Mr. Boveri a full-time job for a salary position working remotely as a developer for Defendant's Washington, D.C. office.

### C. Disclosure of Disability Leads to Withdrawal of Job Offer

12.9.    On or about April 12, 2018, Mr. Boveri responded to the job offer and provided notice of his disability and impairments to Defendant. In this disclosure, Mr. Boveri expressed concerns about his ability to perform a full-time job in the short term before receiving treatment from a neurologist. Mr. Boveri also disclosed that his treatment as scheduled to start on or about the next day, April 13, 2018, and that his doctor had advised him to expect his impairments to improve within one or two months.

12.10.   On or about April 12, 2018, Mr. Boveri received response from the Defendant, indicating because of his disability, that the Defendant would withdraw the offer for the full-time position.

2

ATTACHMENT 2: Supplemental sheet for Section 12, factual allegations

12.11.    On or about April 12, 2018, Mr. Boveri was told by the Defendant to keep his disability a secret and that it would not be disclosed outside the team responsible for hiring him[2]. Mr. Boveri did not protest because he was afraid of further discrimination. Defendant indicated that this would be more challenging than offering a full-time position because of the paperwork required, and stated that Mr. Boveri being given this lower position was a "huge favor."

12.12.    On or about April 12, 2018, ConsenSys offered to create an internship for him to work 20 hours instead of a full-time offer, advising Mr. Boveri that the hourly rate for this position would come at a significant pay cut compared to base salary for full-time position at ConsenSys' Washington, D.C. office. Mr. Boveri requested that they allow him to work more hours to compensate in part for the decreased pay.

12.13.    Mr. Boveri felt pressured to accept the position without comment because he was afraid of further discrimination and because he worried no one else would hire him after this treatment.

### D. Accepted Position for a Department That No Longer Existed

12.14.    On or about May 21, 2018, The Defendant's New York office called Mr. Boveri to finalize the terms of his internship. The Defendant's representative offered him an hourly internship at 40 hours a week, as instructed by the D.C. office. During this call, the Defendant's New York representative apologized for the low salary given Mr. Boveri's PhD and experience, acknowledging that the offer hit the salary cap for interns and could not be increased.

---

[2] At the time, Mr. Boveri was not aware of his rights or that these documentation procedures were prohibited by Title I of the ADA, including 42 U.S.C. § 12112(d)(3)(b).

ATTACHMENT 2: Supplemental sheet for Section 12, factual allegations

12.15.   Mr. Boveri did not disclose the nature of his disability to the Defendant's New York representative because he was afraid of further discrimination from ConsenSys and its employees.

12.16.   On or about June 6, 2018, Mr. Boveri started his internship position working at ConsenSys, believing he was hired to work for the DC Labs department

12.17.   On or about June 6, 2018, Mr. Boveri learned that prior to starting his job, DC Labs had been disbanded, meaning he was hired to a department that no longer existed. Mr. Boveri was told that the decentralization and complete lack of management at ConsenSys had created a hostile work environment for DC Labs. Mr. Boveri was informed that the department was disbanded after the head of DC Labs had been removed from his position and reassigned to another department by the CEO of ConsenSys, Joe Lubin, for allegedly not following established procedures at ConsenSys, allegedly misrepresenting company policy to D.C. employees, and allegedly fostering a hostile work environment.

12.18.   On or about June 6, the Defendant informed Mr. Boveri that he, an intern, was the only member of the DC Labs team, until that time when Human Resources (HR) reassigned him, which never happened. Mr. Boveri was also informed that this was not an unheard-of occurrence at ConsenSys and that there were likely dozens of formally unassigned but productive employees. He was told that in the end his particular assignment did not matter, since most employees at ConsenSys worked in a variety of self-assigned roles across the company, and Mr. Boveri was encouraged to do the same.

ATTACHMENT 2: Supplemental sheet for Section 12, factual allegations

12.19.  Mr. Boveri was never assigned by Defendant to the other team in the office, who worked

for the Solutions department, and received all his paychecks from the unrelated "Labs"

department, to which he was not hired by and did not work for directly.

### E.  Disparate Treatment: Instructed to Act as a Full-Time Employee

12.20.  On or about June 8, 2018, the Defendant instructed Mr. Boveri to consider himself a full-

time employee and to grant himself the same rights and responsibilities given to full-time

employees. This included the right to the unlimited time-off policy (aka, "unlimited

vacations") as granted by the employee handbook, which was not a right granted to interns.

Under this policy, full-time employees only needed the approval of their team for time off, and

there was no formal or informal process for disclosing paid time off to HR[3], and thus HR kept

no documentation of paid-time off authorized by one's team at ConsenSys.

12.21.  On or about June 8, 2018, Mr. Boveri was also told by the Defendant's D.C. office to act

as if he were a salaried, full-time employee by logging 40 hours a week, regardless of hours

worked, and not to log any overtime hours because it would be too much paperwork. Mr. Boveri

was qualified for overtime hours, pursuant to 29 CFR Subpart B, §§ 778.100 - 778.106, and to

his knowledge, no other interns were prohibited by ConsenSys from logging overtime hours.

12.22.  Throughout his employment, Mr. Boveri exceeded Defendant's legitimate expectations

of performance for an intern and was given rights and responsibilities far exceeding what can

reasonably be expected of an intern. As such, these responsibilities consistently required he

work more than 40 hours per week, but without overtime compensation, unlike other interns,

who were allowed to log their overtime hours and be compensated fairly.

---

[3] *Note*, except in the cases of FMLA leave, for which the handbook did outline procedures for notifying HR.

ATTACHMENT 2: Supplemental sheet for Section 12, factual allegations

### F. Disparate Treatment: Denied Promotion Offered to Non-Disabled Employee

12.23.   On or about August 17, 2018, Defendant offered to extend Mr. Boveri's internship at ConsenSys until on or about December 15, 2018.

12.24.   On or about August 17, Mr. Boveri inquired about whether he could get a full-time position. In response, Defendant confirmed that he had met and exceeded the expected performance of a full-time employee. Despite this, he was told by Defendant that he could not be offered a job because there was a "hiring freeze" for the D.C. office of ConsenSys.

12.25.   In or around September, 2018, Mr. Boveri met several new full-time employees at the D.C. office of ConsenSys who had been hired by Defendant during the "freeze."

12.26.   On or about September 19, 2018, Mr. Boveri met a newly hired intern. Mr. Boveri learned this new intern was given a conditional job offer for a full-time position as a developer, but that since he was underqualified, he had to complete a provisional internship. This intern also told Mr. Boveri he had been offered the job in or around May 2018.

12.27.   On or about September 19, 2018, Mr. Boveri asked the Defendant about the terms of the new intern's conditional job offer. The Defendant confirmed that this new intern had been offered the same position that had been withdrawn from Mr. Boveri because of his disability. The Defendant did not deny that Mr. Boveri was treated less favorably because of his disability.

### G. End of Employment at ConsenSys

12.28.   On or about November 12, Mr. Boveri notified his team at ConsenSys that he was to be taking sick leave for at least two weeks (November 28–December 12) for surgery. Following procedures outlined by the employee handbook, his team approved his request and authorized paid-time off for his sick leave.

ATTACHMENT 2: Supplemental sheet for Section 12, factual allegations

12.29.    On November 28, Mr. Boveri had surgery. He was on strict orders from his doctor to not

work for the first week of sick leave.

12.30.    In or around the first week of December, 2018, during his first week of sick leave, Mr.

Boveri felt pressured to work because he wanted to prove that he was worth equal treatment

from Defendant on the hope that proving himself would end the disparate treatment he

received because of his disability.

12.31.    On or about December 2, Mr. Boveri received an email while on sick leave from Human

Resources (HR) requesting he and several full-time employees clarify whether he worked for

the "Solutions" or "Labs" Departments[4]. Mr. Boveri did not respond to the email because he

was on sick leave, but he interpreted this as a sign they were going to fire him or his

colleagues.

12.32.    On December 3, 2018, Mr. Boveri remotely attended a company-wide meeting, to

address the upcoming restructuring of the company into "ConsenSys 2.0." He also wrote the

executive summary of the meeting distributed by other employees to the whole organization, a

responsibility not reasonably expected to be done by a part-time intern[5].

12.33.    The stress of working during sick leave on December 3, 2018, caused severe pain,

bleeding, and intense pains in his right nostril, the site of his surgery. Other employees urged

Mr. Boveri to stop working and rest.

12.34.    On December 4, Mr. Boveri went for a scheduled follow up with his doctor, who noted

that he had suffered complications in his right nostril consistent with the severe pain and

---

[4] *Note*, since there were no managers at ConsenSys, there would be no one with direct authority over Mr. Boveri to answer this question, and HR did not have the ability to discover who was on authorized sick leave.
[5] *Note*, In the context of a decentralized organization without managers, this is called self-organization, such that Mr. Boveri wrote the official executive summary for the meeting notes distributed to 1,000+ of his colleagues.

ATTACHMENT 2: Supplemental sheet for Section 12, factual allegations

bleeding he had experienced the day before. Mr. Boveri's nasal septum had slipped off the
nasal spine into the right nostril, causing pain and bleeding. His doctor found no signs of direct
physical trauma to the nose that could cause the complications.

12.35.    On December 5, Mr. Boveri scheduled a video meeting with one of Defendant's HR
coordinators in New York to understand why HR did not know which department he worked
for. The coordinator disclosed that since DC Labs did not exist by the time his job offer was
processed, it was likely that another HR employee had become confused and selected
(ConsenSys) Labs, instead of (DC) Solutions. The internship coordinator disclosed that he or
she had discovered this specific error and reported it months prior, but that since the internal
documentation procedures at ConsenSys HR were frequently non-compliant and negligent,
many serious HR violations occurred across the entirety of his or her tenure in HR at
ConsenSys despite his or her repeated attempts at correction of this and other errors.

12.36.    On December 6, the Defendant laid off Mr. Boveri without discussion.

## H. Events After Termination of Employment

12.37.    On or about the week of December 10, Mr. Boveri had a discussion with a second HR
coordinator from the New York office of ConsenSys (also laid off on December 6, 2018), who
disclosed that at every level of record keeping, the Defendant made many systematic and
preventable errors. This coordinator disclosed that, for instance, the HR leadership had
recently discovered that the Defendant forgot to lay off their own team's HR intern the
previous week because of disorganized and inaccurate documentation.

8

ATTACHMENT 2: Supplemental sheet for Section 12, factual allegations

12.38.   On December 28, Mr. Boveri's doctor told him that he would require a second surgery to

break and reset his nose and that, until he got the surgery to correct this, it may seriously

impact his ability to breathe and increase his risk of developing chronic sinus infections.

12.39.   On or about March 12, 2019, Mr. Boveri filed a charge of employment discrimination

with the EEOC at the Chicago office within the timeframe allotted Illinois residents.

12.40.   On or about April 25, 2019, the Defendant sent a position statement to the EEOC,

claiming that no offer of a full-time position was ever made and that the disability was never

disclosed. The Defendant also neglected to enter voluntary arbitration or discussion with the

EEOC, claiming that the charges made by Mr. Boveri with the EEOC were fully without merit.

12.41.   On or about May 5, Mr. Boveri requested Defendant's position statement from EEOC.

12.42.   On or about August 4, Mr. Boveri emailed the EEOC to notify he had not received the

position statement.

12.43.   On August 6, 2019, the EEOC phoned Mr. Boveri to indicate that the position statement

had not been released upon being

12.44.   On or about April 26, 2019, Mr. Boveri's doctor advised him to delay the medically

necessary corrective surgery until he achieved a more stable employment situation because his

doctor was concerned that the unexpected difficulty of recovery.

12.45.   In the interim, up to and least including the time of this complaint, Mr. Boveri has

suffered increased impairment from the combined effect of his disability, narcolepsy, and the

mental and physical harm caused by delaying surgery to correct his nasal and sinus anatomy.

These effects include, but are not limited to, persistent chronic sinus infections, mental

anguish, and decrease of sleep quality due to the obstructed nasal passages.

9

ATTACHMENT 3: Supplemental sheet for Section 16, relief

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

16.A.   Order Defendant make whole Mr. Boveri by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, front pay

16.B.   Order Defendant to make whole Mr. Boveri by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of in paragraphs above, including, but not limited to, job search expenses, and medical expense, in amounts to be determined at trial.

16.C.   Order Defendant to make whole Mr. Boveri by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of in paragraphs above, including emotional pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

16.D.   Order Defendant to pay Mr. Boveri punitive damages for its malicious and reckless conduct described in paragraphs above, in amounts to be determined at trial.

16.E.   Grant such further relief as the Court deems necessary and proper.

16.F.   Award the Plaintiff, Mr. Boveri, his costs of this action.

1

ATTACHMENT 3: Supplemental sheet for Section 16, relief

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

16.G.   Order Defendant award damages to Mr. Boveri, including unpaid overtime wages and statutory damages, in amounts to be determined at trial, pursuant to the Fair Labor Standards Act.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 520-2019-02263 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Dr. David J Boveri | ▓▓▓▓▓▓ | |

| Street Address | City, State and ZIP Code |
|---|---|
| DEKALB, IL 60115 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| CONSENSYS, INC | 501+ | ▓▓▓▓▓ |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 05-24-2018 | 12-06-2018 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was offered a permanent Developer position with Respondent. Upon Respondent learning of my disability, my employment offer was rescinded and I was hired as an Intern. Subsequently, on or about December 6, 2018, I was laid off.

I believe that I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by David Boveri on 03-12-2019 12:02 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **David J. Boveri**

Dekalb, IL 60115

From:  **Chicago District Office**
**500 West Madison St**
**Suite 2000**
**Chicago, IL 60661**

☐  On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2019-02263 | **Gregory T. Mucha,**
Investigator | **(312) 869-8135** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Julianne Bowman,**
**District Director**

6/6/19
*(Date Mailed)*

Enclosures(s)

cc:  **CONSENSYS, INC.**
c/o Scott M. Cooper
**Davis Wright Tremaine, LLP**
**21st Floor**
**1251 Avenue of the Americas**
**New York, NY 10020**