UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID BOVERI, | |
| Plaintiff, | Case No. 19-cv-50226 |
| v. | Hon. Lisa A. Jensen |
| CONSENSYS, INC., | |
| Defendant. | |

**DEFENDANT'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS**

This motion addresses plaintiff David Boveri's ("Boveri") ongoing failure to comply with his discovery obligations and, relatedly, his refusal to communicate with opposing counsel to rectify his noncompliance. Due to Boveri's various discovery failures, defendant ConsenSys, Inc. ("ConsenSys") respectfully requests that the Court enter an order directing Boveri (i) to produce the balance of his responsive documents consistent with the terms requested below, (ii) to pay ConsenSys's reasonable attorneys' fees incurred in connection with this motion, and advising Boveri that (iii) any additional failure to abide by discovery deadlines or Court orders will result in the dismissal of his claims with prejudice.

**PROCEDURAL SETTING**

As part of the parties' joint Status Report[1] submitted on May 18, 2020,[2] and again as part of ConsenSys's discovery motion filed on August 19 (the "August 19 Motion"),[3] the parties notified the Court that Boveri had failed, *inter alia*, to complete his document production.

---

[1] In the May 18 Joint Status Report, Boveri joined in Defendant's request that he be ordered to complete his document production by June 1. Moreover, Boveri agreed that if he did not "promptly" complete his document production, ConsenSys would be within its rights to move to compel discovery and "request that the Court order Plaintiff to reimburse Defendant for the related fees and costs."
[2] Unless noted otherwise, all dates are in 2020.
[3] The August 19 Motion was styled as a joint motion in order to comply with Judge Ellis's individual rules.

Although ConsenSys served its document requests on January 24, 2020, Boveri blamed his months-long delay in meeting his discovery obligations on "unforeseen consequences of adjusting his daily schedule due to the COVID-19 pandemic." Boveri vowed, in a written submission to the Court, to "correct and supplement … the deficiencies in [his] document production within the timeline set by the Court."

On October 22, after holding a telephonic conference regarding Boveri's discovery deficiencies addressed in the August 19 Motion, Magistrate Judge Jensen issued an order ("Order") directing Boveri to respond to all outstanding discovery by no later than November 5. On November 5, the parties submitted a proposed case management order, which the Court adopted (as modified) on November 6.

## EVENTS SINCE NOVEMBER 6

Consistent with his pattern of noncompliance with discovery obligations and Court orders, Boveri has again shirked his responsibilities as a litigant, and has brought his own lawsuit to yet another standstill. In his "Amended Objections and Responses" to ConsenSys's document requests, dated and served on November 9,[4] Boveri promised to supplement his document production by November 13. (See Exhibit A.) However, he failed to produce *any* documents. On November 17, ConsenSys's counsel asked for clarity as to the status of Boveri's document production, which should have been completed 12 days earlier.

> The last document that you produced in this matter is Boveri_235. If Boveri_235 represents the completion of your document production, then so state. If Boveri_235 is not meant to represent the completion of your document production, then so state, and immediately complete your document production. This is very straightforward – either (i) you have completed your document

---

[4] Although Boveri served his supplemental responses to ConsenSys's document requests four days *after* the Court's deadline, ConsenSys does not wish to burden the Court with an accounting of every one of Boveri's missed deadlines since the inception of discovery. Instead, at this juncture, ConsenSys seeks relief only in connection with Boveri's incomplete document production and his months-long failure to respond to or otherwise communicate with opposing counsel.

2

> production or, alternatively, (ii) you have not completed your document production.

(See Exhibit B.)

In response, on November 19, Boveri pledged that he was "preparing the final document production today." (See Exhibit C.) However, on November 20, Boveri wrote that he "no longer [had] access to" the Internet e-discovery service Logikcull, which he had used to store his electronic files related to this case, and his "attempts to extract the email messages from mailbox archives in .mbox format have proved unsuccessful." (See Exhibit D.) Boveri acknowledged that he did not have "a valid excuse from [his] obligations to produce all responsive documents in the time frame required by the court," and lamented that "these issues should have been disclosed prior to … November 4, so that [he] could find a suitable solution to fulfill [his] obligations to complete document production by the deadlined [sic] ordered by the court." (*Id*.) Since this November 20 email, Boveri has gone radio silent, despite numerous subsequent attempts by counsel for ConsenSys to meet and confer.[5] Notably, while Boveri has seemingly vanished from his own lawsuit, he has maintained an active social media presence at all times since he missed the Court's November 5 deadline.

- From November 6-21, Boveri remained deficient in his obligation to complete his document production, yet found time to post 19 separate videos to his Instagram account. (See Exhibit E, which contains screengrabs of all 19 social media posts between November 6-21, in chronological order.)

- On November 23, the undersigned counsel responded to Boveri's November 20 email, explaining: "It is up to you to retain an e-discovery service/vendor to convert your .mbox files to a format that will permit you to whittle your voluminous, currently unsearchable records down to only those documents that are responsive to ConsenSys's document requests. Moreover, you must do so at your expense." (See Exhibit F.)

---

[5] Based on Boveri's discovery responses and document production, Boveri is – and at all times since the start of discovery in this case, has been – unemployed. The only thing that we know for certain as to how Boveri spends his time is that he does tend to his various social media accounts across multiple platforms.

3

- On November 25, the undersigned counsel followed up with Boveri by email, asking how Boveri intended to proceed, and highlighting the need to keep the case moving. (See Exhibit G.)

- On November 28, while ignoring correspondence regarding his discovery failures, Boveri found time to post an attempt at comedy to his Instagram page. (See Exhibit H, which contains screengrabs of all of Boveri's social media posts between November 28 – December 25, in chronological order.)

- On November 29, Boveri again found time to post to his Instagram page. (*Id.*)

- On November 30, Boveri again found time to post to his Instagram page. (*Id.*)

- On December 1, the undersigned counsel again emailed Boveri to ask for his availability to meet and confer by phone, in accordance with Local Rule 37.2. (See Exhibit I.)

- On December 3, the undersigned attempted to contact Boveri by phone as a final attempt to meet and confer regarding Boveri's failure to fulfill his discovery obligations. However, Boveri did not answer the call, and his voicemail box was full. Still, the undersigned counsel again followed up by email. (See Exhibit J.)

- On December 18, Boveri recorded, edited, and posted another video to his Instagram page. (See Exhibit H)

- On December 25, Boveri recorded, edited, and posted another video to his Instagram page. (*Id.*)

As of the date of this Motion, ConsenSys does not know whether or not Boveri intends to move forward with his lawsuit. What we do know is that he has been utterly incommunicado since November 20, and has failed to meet his discovery obligations since at least November 6.

## ARGUMENT

    a. **Boveri's Inexplicable Delay in Meeting His Discovery Obligations Has Resulted in His Purported Loss of Access to Responsive, Discoverable Documents In a Viewable, Searchable Format**

Electronic files cannot be viewed or searched while in .mbox format. To view or search such files, someone must undertake the process of converting them to a different format. Then, to figure out what is contained in the .mbox files – which are generally voluminous and can contain anything from spam messages to archived family photographs to the occasional responsive

4

document – a party must take the re-formatted data and either run search terms or review each document, one-by-one.

In this case, Boveri *had* access to electronic documents that he apparently designated as responsive by either viewing them or searching through them in an appropriate format, but then through his own inaction and inattention, he claims, as of November 20, to have *lost* access to those documents in a searchable and viewable format. Based on the information that Boveri provided before he disappeared from this case, he now has access to some or all of those responsive-but-unproduced documents – *but only as part of a backup .mbox file that undoubtedly contains troves of irrelevant, non-responsive documents*.

The apparent spoliation of Boveri's records as they once existed in a searchable and viewable format is directly attributable to Boveri's unexcused delay in completing his document production. As noted above, instead of completing his document production in good faith, Boveri chose to periodically acknowledge his deficient and incomplete production and to issue empty, unfulfilled promises to remedy the situation – only to continue taking no action to do so.

Boveri's refusal since November to communicate with ConsenSys's counselor to otherwise participate in discovery has impeded ConsenSys's ability to obtain a thorough explanation. However, even without supplemental details from Boveri, the likely explanation for how his inattention and neglect of his obligations as a litigant have resulted in his current predicament is this:

- When Boveri finally produced documents in May, he chose to share part of his production via Logikcull. For reasons known only to Boveri, subsequent to his May 29 Logikcull production, he also chose to store – *but not produce* – the balance of what he knew to be responsive documents on Logikcull.

- Boveri likely gained access to Logikcull's e-discovery services only by accepting the terms and conditions of Logikcull's free trial program. (See Exhibit K for a copy of Logikcull's terms and conditions of use, apparently in effect since November 2019. Section 2(f) (entitled

5

"Trial Period") states (with emphasis in original): "Termination will occur immediately upon expiration of the trial period if Customer does not upgrade to a paid plan. ANY NATIVE DATA ENTERED OR UPLOADED INTO THE SERVICE, AND ANY CUSTOMIZATIONS MADE TO THE SERVICE DURING THE TRIAL, WILL BE PERMANENTLY DELETED AND UNAVAILABLE UNLESS CUSTOMER UPGRADES TO A PAID SERVICE PRIOR TO THE CLOSE OF THE TRIAL PERIOD. CUSTOMER UNDERSTANDS AND ACKNOWLEDGES THAT IT WILL NOT BE ENTITLED TO RECEIVE ANY ADDITIONAL FREE TRIALS ONCE THE INITIAL TRIAL PERIOD HAS EXPIRED.")

- As with any free trial, the trial period had an expiration date.

- Again for reasons known only to Boveri, despite multiple assurances since May that he would promptly complete his document production, Boveri did not bother to attempt to access the responsive documents that he stored on Logikcull *until November*.

- At some point during the six months of Boveri's inaction between May and November, Boveri's free trial ended, as all free trial periods inevitably do.

- Because Boveri did not timely produce his responsive documents, and took no steps to back them up in an appropriate format in an appropriate location, the termination of his access to Logikcull's services meant the end of his access to his own responsive files in a searchable or viewable format.

Had Boveri behaved as a reasonable litigant, he could have: (i) timely[6] completed his document production during the period of his Logikcull free trial; (ii) paid Logikcull to extend his access to the service and his own responsive documents; (iii) taken steps to preserve his responsive documents on a personal computer, external hard drive, cloud storage space, or *any location other than on the private web space of a for-profit e-discovery service for which Boveri never thought to remit payment*; or (iv) checked, at any point between May and October, to confirm that his responsive-but-unproduced documents on Logikcull were still accessible to him and, had he learned that they were no longer accessible, informed ConsenSys and the Court promptly of same.

Far from acting reasonably, however, Boveri took none of those measures. Instead, his most recent position on this issue is that he can provide raw data in the form of .mbox files – which

---

[6] The word "timely" is used in a relative sense – even as of the date of his lone Logikull production, May 29, it had been more than four months since ConsenSys served Boveri with its document requests.

cannot, in their current format, be viewed or searched – that *might* contain some responsive documents, but will also contain voluminous quantities of unresponsive, irrelevant documents. Predictably, Boveri acknowledges that he is to blame, but has been completely uncommunicative in the two months since the undersigned counsel conveyed a plan for Boveri to timely complete his document production in an acceptable format.

### b. Boveri's Refusal to Cooperate or Communicate with Opposing Counsel Has Thwarted ConsenSys's Efforts to Keep Discovery Proceeding Apace

On November 23, ConsenSys advised Boveri of its position with regard to his incomplete document production: Boveri must produce his remaining responsive documents in a format such that the documents may be searched or viewed or, in the alternative, if Boveri produces his remaining documents in .mbox format, then he must reimburse ConsenSys for the reasonable costs and fees necessary to (i) convert those files to a format that allows for searching and viewing, and (ii) perform the searches and/or review of same, after those files are converted. Instead of attempting to resolve this problem of his own making, Boveri has simply disappeared from his own lawsuit.

In light of the ongoing pandemic and the remote possibility that Boveri was in some way temporarily incapacitated, ConsenSys provided Boveri with ample time to complete his production or, alternatively, to simply respond to the undersigned counsel's numerous attempts to discuss Boveri's noncompliance before resorting to motion practice. However, a review of Boveri's social media activity reveals that he appears to be physically well, has no shortage of free time and, apparently, has prioritized social media posts over his discovery obligations, which include communicating with his adversary and complying with the Court's October 22 Order.

7

      **c.      ConsenSys is Entitled to Production of Boveri's Remaining Responsive Documents in a Format that ConsenSys can readily View or Search or, Alternatively, if Boveri is Permitted to Produce His Remaining Responsive Documents in .MBOX Format, He Must Bear the Costs Stemming From His Spoliation**

Simply put, Boveri's predicament is the result of his own inexplicable delay, inattention, and failure to treat discovery deadlines with even a modicum of seriousness. Boveri must bear the full financial burden of producing the balance of his responsive documents in a format that may be searched and viewed or, if he fails to do so, he must pay the fees and costs necessary for ConsenSys to (i) convert those files to a format that allows for searching and viewing, and (ii) perform the searches and/or review of same, after those files are converted.

Given the limitations of .mbox files, without the aid of technologies provided by e-discovery vendors, Boveri is unable at this time to differentiate between responsive documents and nonresponsive documents within the .mbox files available to him. More galling than the spoliation of his files in an appropriate format, Boveri in sum and substance asked ConsenSys to: (i) convert/process his .mbox files for him, (ii) obtain space to host those files, (iii) review as-yet-unknown quantities of irrelevant emails to find and identify the few that Boveri purportedly believes *might* be responsive, and (iv) complete items (i) through (iii) at ConsenSys's considerable expense.

As a litigant in this case, it is Boveri's responsibility to timely produce non-privileged responsive documents when requested, and to do so without also unreasonably inundating ConsenSys with a document dump comprised of mostly irrelevant material. Boveri's November 20 explanation that he "*no longer* ha[s] access to Logikcull" (emphasis added) indicates that earlier in 2020 he *did* have access to the individual responsive files at issue, but that his inexplicable delay

8

in producing documents responsive to requests served in January 2020 resulted in the spoliation that Boveri describes in his November 20 email.

After months of Boveri's inaction, followed by his November 20 explanation that, in effect, "Logikcull ate his homework," ConsenSys should not have to bear the financial burden of obtaining, converting, hosting, searching, and reviewing .mbox files when, according to Boveri, the remaining responsive documents he has not yet produced were available to him as searchable and viewable documents for several months following service of ConsenSys' January 2020 document requests.

Accordingly, it is solely Boveri's responsibility to retain an e-discovery service or vendor to convert his .mbox files to a format that will permit him to whittle his voluminous, currently unsearchable records down to only those documents that are responsive to ConsenSys's document requests; if Boveri fails to do so, then he must reimburse ConsenSys for all of the fees and costs that reasonably flow from his spoliation of documents in their appropriate format, and subsequent production of .mbox files that cannot be viewed or searched without expense. And frankly, given his complete disregard of his obligations as a litigant to this point in the case, it is difficult to imagine that Boveri would actually comply with an order to reimburse ConsenSys for these substantial expenses.

### d. ConsenSys Should be Awarded Its Reasonable Attorneys' Fees in Connection with This Motion

The instant motion is the <u>third time</u> that ConsenSys has provided the Court with a detailed written account of Boveri's failure to comply with his discovery obligations, and it is the second time that ConsenSys has had to resort to motion practice to do so. The Order (entered following ConsenSys's August 19 Motion) directed Boveri to complete his document production by no later than November 5; however, judging from his emails to the undersigned counsel, Boveri did not

even attempt to take the steps necessary to complete his document production until November 19. Then, when he belatedly did so, he discovered that he no longer had access to the responsive-but-unproduced files that, at the very least, he was obligated to preserve in a format that could have been viewed and searched. This outcome was completely avoidable, and Boveri's refusal to discuss a resolution to his predicament has only exacerbated the problem – and has left ConsenSys with no viable option but to file the instant Motion, which requests some of the same relief that ConsenSys sought by way of the May 18 Joint Status Report and the August 19 Motion, and which the Court granted as a result of the latter.

ConsenSys respectfully requests that the Court order Boveri to reimburse its reasonable attorneys' fees in connection with this motion.[7]

Plaintiff's behavior is sanctionable, albeit for separate reasons, pursuant to *both* Fed. R. Civ. P. 37(a)(5)(A) *and* 37(b)(2)(A).

As provided for in Fed. R. Civ. P. 37(a)(5)(a):

> If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

This Court's recent decision in *Roldan v. Coca Cola Refreshments USA, Inc.* is instructive:

> Plaintiff's recalcitrance forced the defendant to go through the expense of filing another motion to compel. And that – not non-

---

[7] If he resurfaces to oppose this Motion, Boveri may cite his status as a *pro se* plaintiff as a reason for why the Court should not impose sanctions. That argument is of no moment. *Pro se* litigants "are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994); see also *Raven v. Madison Area Tech. Coll.*, 443 F. App'x 210, 212 (7th Cir. 2011) ("[a]lthough we liberally construe *pro se* filings ... we do not enlarge filing deadlines for them"); *3SM Realty & Dev., Inc. v. F.D.I.C.*, 443 F. App'x 181, 183 (7th Cir. 2010) ("status as a pro se litigant does not excuse his failure to meet the mandatory deadline"). Moreover, Boveri holds a Masters degree and PhD; he is more than capable of responding to emails, returning phone calls, and taking steps to comply with his discovery obligations.

> compliance with the court's subsequent order or orders – is what triggers fee-shifting in this case. …
>
> Plaintiff failed to provide the discovery at issue in a timely manner, occasioning the filing of two motions and the issuing of three court orders. The plaintiff, as already indicated, was given leeway as a *pro se* litigant, but the expense of this most recent motion should not be borne by the defendant. After all, *pro se* litigants are not exempt from the rules which govern all other litigants. … Even *pro se* litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines. *Brownlow v. Van Natta*, 2 Fed.Appx. 516, 519 (7th Cir. 2001).

2021 WL 38139 at *1, Cole, M.J. (N.D. Ill. Jan. 5, 2021) (ordering *pro se* plaintiff to pay defendant's attorneys' fees in connection with motion filed after court denied defendant's earlier motion and set new discovery deadlines, and plaintiff failed to comply with same). As the Court in *Roldan* noted, "the only way to avoid a fee award under these circumstances is to demonstrate that (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id*. at *2.

Here, Boveri is unable to claim any of the three exceptions that would allow him to avoid an order for the reimbursement of ConsenSys's reasonable attorneys' fees. "The idea underlying the Rule is that a party should not be put to the expense of filing motions to obtain the discovery to which it is otherwise entitled." *Roldan* at *1. Given the similar underlying facts in this case, the Court should sanction Boveri in the same way that it sanctioned Roldan earlier this month.

Alternatively, Fed. R. Civ. P. 37(b)(2)(A) provides that, "[i]f a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders" that "may include" sanctions as severe as dismissal of the action. Specifically, Rule 37(b)(2)(C) states that "[i]nstead of or in addition to" the penalties enumerated in Rule

11

37(b)(2)(A)(i) through (vii), "the court must order the disobedient party … to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

Here, Boveri has already admitted in his November 20 email that he does not have "a valid excuse from [his] obligations to produce all responsive documents in the time frame required by the court." We can also surmise from Boveri's correspondence that he did not make any effort to access and produce the responsive documents at issue until November 19 – two full weeks after the Court-ordered deadline for him to complete his production. (*See e.g.*, *Willis v. Northern Illinois Gas Co.*, 2020 WL 7626734 at *4 (N.D. Ill. Dec. 22, 2020) (Plaintiff's repeated failure to abide by discovery deadlines, and his admission that he "did not begin to work on [his discovery responses] until after he had missed the … deadline three times" justified the harsh sanction of dismissal with prejudice.)) Subsequent to that concession, Plaintiff has taken no steps to remedy his deficient production, and has ignored every communication from opposing counsel.

"Plaintiff chose this course and must assume the burdens that come with it." *Roldan* at *2. As such, Boveri – as the person who initiated this action and has since lost interest – must shoulder the financial responsibility for his actions and inaction, and the consequences of same.

### e. Boveri's Claims Should be Dismissed In the Event that He Fails to Comply with the Court's Order

In light of Boveri's history of ignoring deadlines, disregarding court orders, and refusing to abide by even his own deadlines, the Court should admonish Boveri that his claims will be dismissed with prejudice if he again fails to comply with any applicable deadline or timing obligation under the Federal or Local Rules of Civil Procedure, or with any aspect of any Court order.

12

## **CONCLUSION**

For the reasons stated above, ConsenSys respectfully requests that the Court enter an order granting this Motion in full.

Dated: New York, New York
January 27, 2021

Respectfully submitted,

/s/ Scott M. Cooper
Kerry E. Saltzman (ARDC No. 6191194)
WILLIAMS, BAX & SALTZMAN, P.C.
Attorneys for Defendant
221 N. LaSalle St., Ste. 3700
Chicago, IL 60601

Laura Sack (admitted pro hac vice)
Scott M. Cooper (admitted pro hac vice)
DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendant
1251 Avenue of the Americas, 21st Floor
New York, New York 10020