UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID BOVERI,<br><br>        Plaintiff,<br><br>v.<br><br>CONSENSYS, INC.,<br><br>        Defendant. | Case No. 19-cv-50226 (IDJ) (LAJ) |

**RULE 56.1 STATEMENT OF MATERIAL FACTS**

Defendant ConsenSys, Inc. ("ConsenSys") hereby submits its Local Rule 56.1(a)(2) Statement identifying undisputed material facts:

**I.    Boveri Collaborates with Kel Kanhirun to Secure a ConsenSys Internship**

1.    On or about February 21, 2018,[1] Kel Kanhirun commenced employment with ConsenSys as a Software Developer. (Ex. 1, Cibotti Decl. at ¶ 6.)[2]

2.    In that role, Kanhirun was responsible for software development; Kanhirun never held any supervisory authority as a ConsenSys employee – he was never permitted to make hiring decisions or to discipline, promote, or terminate ConsenSys employees (or interns). (Ex. 1, Cibotti Decl. at ¶ 7; Ex. 2, Jansen Decl. at ¶ 4.)[3]

3.    Kanhirun also was not, at any time, a member of a ConsenSys hiring committee or any other group vested with the authority to make hiring decisions. (Ex. 1, Cibotti Decl. at ¶ 8; Ex. 2, Jansen Decl. at ¶ 5.)

---

[1] All dates herein occurred in 2018, unless otherwise noted.
[2] A true and correct copy of the Declaration of Nina Cibotti ("Cibotti Decl.") is annexed hereto as Exhibit 1.
[3] A true and correct copy of the Declaration of Walter "Chip" Jansen ("Jansen Decl.") is annexed hereto as Exhibit 2.

4. Likewise, Kanhirun had no authority to grant, deny, or even access or consider requests for accommodation of disabilities. (Ex. 1, Cibotti Decl. at ¶ 9; Ex. 2, Jansen Decl. at ¶ 6.)

5. Boveri and Kanhirun had been friends since college, when they both attended Northern Illinois University and worked together on a project called Anonymonkey. (Ex. 3, Pl. Dep. Tr., at 44; 54-55.)[4]

6. In late 2017, Boveri informed Kanhirun that he had recently been homeless because he was disabled and his family had disowned him. (Ex. 3, Pl. Dep. Tr. at 45; 48-49.)

7. Kanhirun soon provided Boveri with a payment of $4,000, meant to cover six months' worth of Boveri's rent, along with other essential needs. (Ex. 3, Pl. Dep. Tr. at 44-45, 48.)

8. In early 2018, Kanhirun also engaged Boveri to perform "consulting" work on a project-by-project basis. (Ex. 3, Pl. Dep. Tr. at 46-48.)

9. Soon after Kanhirun gifted $4,000 to Boveri to cover basic life expenses, Boveri and Kanhirun began discussing the possibility of Boveri pursuing gainful employment with ConsenSys. (Ex. 3, Pl. Dep. Tr. at 44-52.)

10. According to Boveri, Kanhirun wanted to help him achieve some degree of financial stability. (Ex. 3, Pl. Dep. Tr. at 49.)

11. Starting in or about March 2018, Boveri and Kanhirun worked together for weeks to transform Boveri (at least in the eyes of ConsenSys) from a career academic with little or no

---

[4] True and correct copies of relevant transcript pages from the depositions of David Boveri ("Pl. Dep. Tr.") are annexed hereto as Exhibit 3.

2

private sector work experience into a viable candidate for a ConsenSys summer internship. (Ex. 3, Pl. Dep. Tr. at 52-56; Ex. 4;[5] Ex. 5.[6])

12. Kanhirun's advice and strategic communications to Boveri included, without limitation: (i) what to include in Boveri's resume and LinkedIn profile (Ex. 3, Pl. Dep. Tr. at 55-56; Ex. 4; Ex. 5); (ii) how to dress and otherwise present himself during an interview (Ex. 3, Pl. Dep. Tr. at 53-54; Ex. 4; Ex. 5); and (iii) various cryptic references to the pair's mutual "strategic goals" and "short-term and long-term financial solution." (Ex. 4.)

## II. Boveri Applies for a Summer Internship with ConsenSys

13. On March 14,[7] Kanhirun presented Boveri with two different ConsenSys job opportunities: a summer internship and the "New Grads Program," a full-time permanent position meant for people who were no longer students. (Ex. 6.)[8]

14. Kanhirun directed Boveri to "[p]ick the one that suits you." (*Id*.)

15. On March 19, Boveri told Kanhirun that he preferred to apply for a summer internship instead of a full-time permanent position with ConsenSys: "I finally looked over the jobs and internships. The New Grads Program seems to be for full-time employees (it mentions healthcare), so I'll be applying to the 2018 ConsenSys Summer Internship." (Ex. 5.)

16. Boveri applied for the 2018 ConsenSys Summer Internship on March 21, and received an email from ConsenSys confirming receipt that same day. (Ex. 7.)[9] Because ConsenSys lists its available employment opportunities on its website, Boveri was not limited to

---

[5] True and correct copies of messages between Kanhirun and Boveri from 2018, produced by Boveri in discovery, are annexed hereto as Exhibit 4.
[6] A true and correct copy of messages between Kanhirun and Boveri from March 2018, produced by Boveri in discovery, is annexed hereto as Exhibit 5.
[7] Unless otherwise noted, all dates referenced herein occurred in 2018.
[8] A true and correct copy of a message from Kanhirun to Boveri, dated March 14, 2018, and produced by Boveri in discovery, is annexed hereto as Exhibit 6.
[9] A true and correct copy of an automated message from ConsenSys to Boveri, dated March 21, 2018, and produced by Boveri (without a bates stamp) in discovery, is annexed hereto as Exhibit 7.

the two opportunities that his friend told him about, and could have performed his own search; however, Boveri chose to apply only for an internship. (Ex. 1, Cibotti Decl. at ¶ 14.)

17. Specifically, the March 21 confirmation email from ConsenSys to Boveri thanks him for applying for a "2018 ConsenSys Summer Internship." (*Id*.)

18. The 2018 Summer Internship is the only ConsenSys position for which Boveri ever applied; with the exception of that one internship opportunity, Boveri never applied for a full-time permanent position, independent contractor engagement, or any other form of working arrangement with ConsenSys. (Ex. 3, Pl. Dep. Tr. at 71-72, 87, 105-06, 261.)

19. The March 21 email was the only such communication that Boveri received confirming receipt of any application to work for ConsenSys. (Ex. 3, Pl. Dep. Tr. at 71-75; 87; 105-06.)

20. On April 2, Lianna Newman, Full Stack Developer, sent Boveri an email to invite him to interview for a summer internship. (Ex. 8.)[10]

21. ConsenSys interviewed Boveri for the summer internship soon thereafter. (Ex. 3, Pl. Dep. Tr. at 77-78, 106.)

22. According to Boveri, ConsenSys never invited him to interview for any position other than the 2018 Summer Internship, which was the only ConsenSys internship for which he applied. (Ex. 3, Pl. Dep. Tr. at 77-78.)

23. As of April 7, Boveri's and Kanhirun's common "strategic goals" included getting Boveri hired by ConsenSys. (Ex. 3, Pl. Dep. Tr. at 99; Ex. 4.)

---

[10] A true and correct copy of a messages between Newman and Boveri, dated April 2, 2018, and produced by Boveri (without a bates stamp) in discovery, is annexed hereto as Exhibit 8.

4

**III.     ConsenSys Offers Boveri the Only Position for Which He Applied**

24.     On May 21, Elizabeth Gottlieb, ConsenSys' Internship Coordinator, emailed Boveri to arrange a telephonic conversation about the details of the 2018 Summer Internship for which Boveri had applied and interviewed in March and April, respectively.  (Ex. 9.)[11]

25.     On May 23, Gottlieb conveyed to Boveri the terms of the Company's offer for Boveri's 2018 Summer Internship.  (Ex. 3, Pl. Dep. Tr. at 121-22; Ex. 10.)[12]

26.     Boveri memorialized the conversation in notes that he took on that same date.  (Ex. 10.)

27.     Specifically, Boveri's notes reflect that Gottlieb offered him an internship that would run from June 6 to August 17, and would pay Boveri an hourly wage of $40 for 40 hours a week.  (*Id*.)

28.     On May 24, Gottlieb emailed Boveri with a formal written internship offer, which was signed by ConsenSys' CEO and Founder, Joseph Lubin, who was the only ConsenSys employee authorized to hire new employees and interns.  (Ex. 1, Cibotti Decl. at ¶ 5; Ex. 11.)[13]

29.     ConsenSys never sent Boveri any letter offering him any position other than his internship.  (Ex. 3, Pl. Dep. Tr. at 124.)

30.     Although the record includes (i) email correspondence between Boveri and Gottlieb for the purpose of scheduling the May 23 call, (ii) Boveri's notes from that call, and (iii) a formal May 24 offer letter inviting Boveri to accept the 2018 Summer Internship for which he applied, there is no record evidence of any of the foregoing types of documents in connection

---

[11] A true and correct copy of a message from Gottlieb to Boveri, dated May 21, 2018, and produced by Boveri in discovery, is annexed hereto as Exhibit 9.
[12] A true and correct copy of a document prepared by Boveri on May 23, 2018, and produced by Boveri in discovery, is annexed hereto as Exhibit 10.
[13] A true and correct copy of Boveri's May 24, 2018 offer letter, produced by ConsenSys in discovery, is annexed hereto as Exhibit 11.

5

with any other position or opportunity, aside from the 2018 internship. (Ex. 9, Ex. 10, and Ex. 11.)

31. Boveri never created any notes or records reflecting the terms of any offer from ConsenSys of employment or other work arrangement – other than the internship. (Ex. 3, Pl. Dep. Tr. at 120-22.)

32. Boveri accepted ConsenSys' offer of a summer internship, and commenced working for ConsenSys on June 6. (Ex. 11.)

33. Contemporaneous communications prove that Boveri was quite pleased with the terms of his ConsenSys internship: "I'm just an intern for now, but holy shit dude, I'm rolling in benjies. … Normally I wouldn't brag about my income, but this fuckin intern pulls in over six racks a month to sit on his couch." (Ex. 12.)[14]

## IV. Boveri Alleges that ConsenSys Offered Him Opportunities Other Than His Internship, But Rescinded Those Offers Because Boveri Told His Friend that He had a Disability

34. In April, without the authority to make hiring decisions, but with an apparent interest in seeing his friend get hired, Kanhirun sent Boveri a running series of text messages containing his speculation and personal opinions on the fate of Boveri's employment prospects. (Ex. 1, Cibotti Decl. at ¶¶ 7-8; Ex. 2, Jansen Decl. at ¶ 4-6; Ex. 13 at 246-50.)[15]

35. Although the record contains no evidence of ConsenSys offering Boveri any position other than the one internship for which he applied (Ex. 2, Jansen Decl. at ¶ 10), Boveri now claims that based on his "understanding," and from his "perspective," ConsenSys – through

---

[14] A true and correct copy of a document prepared by Boveri on June 29, 2018, and produced by Boveri in discovery, is annexed hereto as Exhibit 12.

[15] A true and correct copy of messages between Kanhirun and Boveri, dated April 2018, and produced by Boveri in discovery, is annexed hereto as Exhibit 13.

6

Boveri's friend and benefactor, Kanhirun – twice offered him something other than an internship, and then rescinded those offers. (Ex. 3, Pl. Dep. Tr. at 92-96, 116-18.)

36. However, Boveri testified that

- He was not a party to any communication in which ConsenSys offered him a position as an independent contractor (Ex. 3, Pl. Dep. Tr. at 92-96);

- A text message from Kanhirun "and verbal conversations surrounding it" comprised ConsenSys' supposed offer of an independent contractor engagement (for which Boveri neither applied nor interviewed) (Ex. 3, Pl. Dep. Tr. at 92-96);

- He was never privy to or present for any meetings or votes of the supposed "hiring committee" that he alleges first decided to extend offers to him of something other than an internship, and then rescinded same (Ex. 3, Pl. Dep. Tr. at 97-98);

- Despite having received a formal offer letter and phone call from ConsenSys conveying an offer of the summer internship for which he applied, he never received an offer letter or any other communication from ConsenSys extending to him any other opportunity to provide services in exchange for remuneration (Ex. 3, Pl. Dep. Tr. at 124);

- He never "attempted to accept an offer of an independent contractor role with ConsenSys" and never "attempted to accept an offer of full-time employment as a product manager with ConsenSys" (Ex. 3, Pl. Dep. Tr. at 112-13);

- Newman was the person who supposedly "rescinded" the alleged offers of positions for which Boveri did not apply, but Newman never conveyed any offer to Boveri in the first place and, likewise, Newman did not communicate the rescission of any offer to Boveri (Ex. 3, Pl. Dep. Tr. at 116-18); and

- Boveri did not receive a written offer to work as a product manager. (Ex. 3, Pl. Dep. Tr. at 107-110.)

37. ConsenSys never employed Newman as a supervisor; Newman had no authority to hire, discipline, or terminate employees, and had no authority to unilaterally hire (or rescind an offer to) Boveri. (Ex. 1, Cibotti Decl. at ¶ 11; Ex. 2, Jansen Decl. at ¶ 7.)

7

38. Likewise, Newman had no authority to grant, deny, or even access or consider requests for accommodation of disabilities, and was not a member of – or authorized to act on behalf of – ConsenSys' Human Resources function. (Ex. 1, Cibotti Decl. at ¶ 12; Ex. 2, Jansen Decl. at ¶ 8.)

39. At no time during Newman's employment did Newman (or any other employee with the title Full Stack Developer) have the authority to evaluate an employee's or candidate's physical or mental restrictions in an effort to determine whether or not the person could perform the essential functions of a particular job. (Ex. 1, Cibotti Decl. at ¶ 13; Ex. 2, Jansen Decl. at ¶ 9.)

40. Boveri explained during his deposition that the supposed job offer to become a product manager "is outside the timeframe" of his complaint because it was beyond the limitations period. (Ex. 3, Pl. Dep. Tr. at 111.)

41. He also testified that he is not aware of any documents related to an offer to work as a product manager, and did not look for any during discovery in this case. (Id.)

42. Boveri concedes that because he has never received an offer of permanent employment from any employer other than his own limited liability corporation, it "is very possible" that he does not know what an offer of full-time employment looks like, and might have misconstrued routine text messages with his friend, on the one hand, as offers of employment or independent contractor engagements, on the other hand. (Ex. 3, Pl. Dep. Tr. at 118-19.)

### V. ConsenSys Extends Boveri's Internship

43. Effective August 13, ConsenSys extended Boveri's internship for another three months, with an end date of December 13. (Ex. 14.)[16]

44. Boveri admits that he did not apply for a promotion to a permanent position, or for reassignment of any kind, and does not consider the extension of his internship to be evidence of discrimination: "I do not allege that that was an act of discrimination, specifically. No, specifically, I allege that it was the initial hiring process that was discriminatory." (Ex. 3, Pl. Dep. Tr. at 261, 289.)

45. Boveri alleges that ConsenSys treated a supposed comparator better than it treated him, based on his belief that ConsenSys offered that individual full-time permanent employment despite concerns that the employee was unqualified. (Ex. 3, Pl. Dep. Tr. at 249-50; Complaint at ¶¶ 12.26 – 12.27.)

46. Boveri does not know the name of the alleged comparator and concedes that he has no knowledge as to whether or not the unidentified comparator (i) was disabled or perceived as disabled, or (ii) had applied for a full-time permanent position; according to Boveri, any speculation on his part that the mystery comparator was not disabled would have been based on Boveri's own "guess." (Ex. 3, Pl. Dep. Tr. at 249-50.)

### VI. Boveri Violates ConsenSys Policy When He Places Himself on Paid Leave of Absence Without Informing Human Resources

47. Boveri claims to be a disabled individual, alleging that his disabilities during his internship included narcolepsy and other sleep disorders, postural orthostatic tachycardia syndrome, and chronic sinus infections. (Ex. 3, Pl. Dep. Tr. at 129.)

---

[16] A true and correct copy of plaintiff's August 13, 2018 offer letter to extend his internship, produced by ConsenSys in discovery, is annexed hereto as Exhibit 14.

9

48. Boveri alleges that he took time off from work in late November through early December to undergo and recover from surgery related to one of his disabilities. (Ex. 3, Pl. Dep. Tr. at 129, 140, 264-65, 290; Complaint at ¶ 12.29.)

49. At all times relevant to Boveri's internship and his candidacy for same, ConsenSys' Americans with Disabilities Act Policy ("ADA Policy") governed the process for employees to request and obtain reasonable accommodations of disabilities. (Ex. 15.)[17]

50. Boveri was familiar with ConsenSys' ADA Policy throughout his employment. (Ex. 3, Pl. Dep. Tr. at 127-28.)

51. ConsenSys' ADA Policy states, in pertinent part:

> Reasonable accommodation is available to an employee with a disability when the disability affects the performance of job functions. ConsenSys will attempt to reasonably accommodate qualified individuals with a temporary or long-term disability so that they can perform the essential functions of the job, unless doing so would create an undue hardship for the operations of the Company.
>
> If you are currently disabled or become disabled during your employment and are in need of a reasonable accommodation, you should contact your HR Business Partner to assist you with evaluating reasonable accommodations that may enable you to perform the essential functions of your job.

(Ex. 15.)

52. Boveri's personnel files maintained by ConsenSys contain no mention of Boveri (i) disclosing a disability to ConsenSys; (ii) requesting an accommodation of a disability; or (iii) being granted (or denied) any accommodation of a disability; Boveri admits that he never communicated with ConsenSys' Human Resources team – or any other supervisor – about a

---

[17] A true and correct copy of ConsenSys' Americans with Disabilities Policy, produced by ConsenSys in discovery, is annexed hereto as Exhibit 15.

10

disability or need for accommodation of a disability, and he never submitted any documentation to ConsenSys about or in support of a need for accommodation. (Ex. 3, Pl. Dep. Tr. at 153.)

53. According to Boveri, despite the language of the ADA Policy, he never attempted to inform Human Resources that he planned to miss any work time at all; despite that, Boveri alleges that his requests for accommodation were "never denied." (Ex. 3, Pl. Dep. Tr. at 148-50, 154-56.)

54. Despite the language of the ADA Policy, Boveri claims that to take a leave of absence while employed by ConsenSys, "all you had to do was put it on your calendar." (Ex. 3, Pl. Dep. Tr. at 156.)

55. Boveri's offer letter explained that as an intern, he was not eligible for paid time off. (Ex. 11.)

56. Boveri concealed the fact of his leave of absence by intentionally misleading ConsenSys Human Resources when he lied about his hours worked during the weeks he counted as his "leave." (Ex. 3, Pl. Dep. Tr. at 290)

57. Specifically, Boveri admits that although he did not work 40 hours a week during his leave of absence, and although his ConsenSys offer letter made plain that he was not eligible for paid time off, he still entered "40 hours" as his time worked on his weekly time sheets during his unilateral leave of absence. (Ex. 3, Pl. Dep. Tr. at 290; Ex. 11.)

58. Boveri claims that his purported "sick leave" was not the first time that ConsenSys unwittingly accommodated his disabilities; instead, Boveri alleges that his friend, Kanhirun (and no one else), approved Boveri's requests for a flexible schedule to take naps when Boveri desired; in fact, Kanhirun was the only ConsenSys employee to whom Boveri disclosed his disability. (Ex. 3, Pl. Dep. Tr. at 147-48, 154-55.)

11

59. Relatedly, Boveri claims that he was unable to figure out who worked in the Company's Human Resources function, and who he was supposed to approach with his request(s) for accommodation and, in any event, that Kanhirun advised him against disclosing a disability to ConsenSys. (Ex. 3, Pl. Dep. Tr. at 136-41, 148-50.)

60. Boveri was able to identify and contact the appropriate members of ConsenSys' Human Resources function, including when he spoke with Crystal Cruz (People Advisor) after ConsenSys accidentally overpaid him. (Ex. 3, Pl. Dep. Tr. at 142-43.)

61. Boveri understood that the People team was the same as Human Resources. Boveri testified: "Does 'People' overlap with HR? At the time, I assumed yes." (Ex. 3, Pl. Dep. Tr. at 136.)

62. According to Boveri, Kanhirun – *and only Kanhirun* – told Boveri to "keep [Boveri's disability] hidden and quiet." (Ex. 3, Pl. Dep. Tr. at 148-50.)

63. Boveri adhered to Kanhirun's advice, as he never requested any accommodation from ConsenSys supervisors or Human Resources. (Ex. 3, Pl. Dep. Tr. at 148-50, 153-56.)

64. Boveri does not allege that ConsenSys denied him a leave of absence, only that he felt "pressured into not using" the leave of absence that, in fact, he never formally applied for or otherwise disclosed to ConsenSys' Human Resources function, but still took while simultaneously claiming on his timesheet that he worked 40 hours a week so that he received paid time off that, as an intern, he was not entitled to. (Ex. 3, Pl. Dep. Tr. at 212-14.)

65. Specifically, Boveri claims that Carol Xu, Research Scientist, was aware of Boveri's "paid leave," but still asked Boveri – an intern – to interview a candidate for employment during Boveri's unapproved "paid leave." (Ex. 3, Pl. Dep. Tr. at 151.)

12

66. Boveri also alleges that on December 3, again while taking his unauthorized paid leave, he "wrote the executive summary" of a Company-wide meeting, whatever that means; Boveri can cite no record evidence reflecting that any ConsenSys supervisor asked him to do such a thing, or that any supervisor believed that Boveri was on an approved leave of absence as an accommodation of a disability. (Complaint at ¶ 12.32.)

67. When asked to identify all ConsenSys employees who he believes discriminated against him, Boveri named only Kanhirun and Newman. (Ex. 3, Pl. Dep. Tr. at 158-59.)

**VII.  ConsenSys Includes Boveri in a Reduction in Force**

68. On December 6, ConsenSys implemented a reduction in force that resulted in the dismissal of 13 percent of the Company's workforce; because Boveri's internship was about to end on December 14 anyway, and because the Company's decisionmakers were unaware of any positive contributions that Boveri actually made to ConsenSys' bottom line, ConsenSys included Boveri in its December 6 reduction in force. (Ex. 14, Ex. 16,[18] Ex. 17.[19])

69. Boveri does not contend that ConsenSys violated any laws when it terminated his employment. (Ex. 3, Pl. Dep. Tr. at 163.)

---

[18] A true and correct copy of Boveri's December 2018 notice of termination and a cover email attaching same, produced by ConsenSys in discovery, are annexed hereto as Exhibit 16.
[19] A true and correct copy of November 2018 email correspondence between Zahava Kahan and Agnes Budzyn regarding Boveri's inclusion in the 2018 reduction in force, produced by ConsenSys in discovery, is annexed hereto as Exhibit 17.

Dated: New York, New York
       August 23, 2021

DAVIS WRIGHT TREMAINE LLP

By: /s/ Scott Cooper
    Laura Sack (*admitted pro hac vice*)
    Scott Cooper (*admitted pro hac vice*)

1251 Avenue of the Americas, 21st Floor
New York, New York 10020
laurasack@dwt.com
scottcooper@dwt.com

Kerry Saltzman
WILLIAMS, BAX & SALTZMAN, P.C.
221 N. LaSalle St., Ste. 3700
Chicago, IL 60601
saltzman@wbs-law.com