UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID BOVERI,<br><br>        Plaintiff,<br><br>v.<br><br>CONSENSYS, INC.,<br><br>        Defendant. | Case No. 19-cv-50226 (IDJ) (LAJ) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**DAVIS WRIGHT TREMAINE LLP**
Laura Sack (*admitted pro hac vice*)
Scott Cooper (*admitted pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, New York 10021
laurasack@dwt.com
scottcooper@dwt.com

**WILLIAMS, BAX & SALTZMAN, P.C.**
Kerry Saltzman
221 N. LaSalle St., Ste. 3700
Chicago, IL 60601
saltzman@wbs-law.com

**PRELIMINARY STATEMENT**

This action arises from several events that *did not occur*:

- While Plaintiff David Boveri ("Boveri") alleges that defendant ConsenSys, Inc. ("ConsenSys" or the "Company") discriminated against him by denying him job opportunities, *he admits that he did not apply* or interview for any of the positions that he now claims were discriminatorily denied to him. (R. 56.1 Statement of Material Facts, ¶¶ 15, 17, 18, 22, 44.)

- While Boveri alleges that ConsenSys failed to accommodate his disabilities, *he admits that he did not request an accommodation of a disability* from, let alone even disclose any disability to, any ConsenSys employee other than his longtime personal friend, who was neither a supervisor nor a member of Human Resources. (R. 56.1 Statement of Material Facts, ¶¶ 2, 4, 38, 49-54, 56-59, 63.)

- While Boveri alleges that he felt "pressured" into working during what he characterizes as a "leave of absence," *he admits that he did not submit a request for accommodation to Human Resources in accordance with ConsenSys' written policy for requesting leave and other accommodations of disabilities* (claiming, incredibly, that to request a leave of absence as an accommodation of a disability, "all you had to do was put it on your calendar"), and thus he *was not actually on an approved leave of absence at any time during his internship*. (R. 56.1 Statement of Material Facts, ¶¶ 49-54, 56-58, 64.)

The *facts*[1] – supported by record evidence, including Boveri's own testimony and document production – make plain that Boveri's experience throughout the hiring process and then during his six-month internship was altogether free of the discrimination Boveri claims to have suffered.

On March 21, 2018,[2] Boveri applied for a summer internship with ConsenSys (the "2018 Summer Internship"). (R. 56.1 Statement of Material Facts, ¶¶ 16-17.) That internship is the only ConsenSys position for which Boveri ever applied. (R. 56.1 Statement of Material Facts, ¶¶ 18-19.) Shortly thereafter, ConsenSys invited Boveri to interview for that internship. (R. 56.1 Statement of Material Facts, ¶¶ 20-22.) After his interview, ConsenSys offered Boveri the

---

[1] ConsenSys respectfully refers the Court to ConsenSys' R. 56.1 Statement of Material Facts for a complete recitation of facts relevant to the instant motion for summary judgment.
[2] All dates herein occurred in 2018, unless otherwise noted.

1

summer internship for which he had applied and interviewed. (R. 56.1 Statement of Material Facts, ¶¶ 24-31.) Boveri accepted ConsenSys' offer, and soon commenced his internship, which was eventually renewed, and continued until December 2018, when ConsenSys included Boveri in a significant reduction in force, effective only one week before the scheduled end of Boveri's extended internship. (R. 56.1 Statement of Material Facts, ¶¶ 32, 33, 43, 68-69.)

Boveri has confirmed *under oath* that the above is accurate. However, for purposes of this lawsuit, Boveri hypothesizes about a variety of alleged events: (i) that he did not personally witness, (ii) for which he can cite no evidentiary support, and (iii) that make no sense in light of the undisputed record. None of this suffices to defeat the Company's motion for summary judgment.

Following 18 months of discovery, the Federal Rules of Civil Procedure require Boveri to be able to point to record evidence in support of his claims. Yet the record in this case is devoid of even a scintilla of evidence that ConsenSys engaged in discrimination or unlawfully failed to accommodate a disability. Instead, according to Boveri's own testimony, ConsenSys offered him the *only* job for which he applied, and once he began his internship, Boveri helped himself to whatever accommodations he desired, while ignoring the Company's written ADA Policy – even going so far as to conceal from Human Resources the fact that he took an unapproved sick leave by submitting fraudulent weekly timesheets indicating that he worked a full 40-hour week when, in fact, he did not. (R. 56.1 Statement of Material Facts, ¶¶ 18, 28, 49-58.) On this undisputed record, ConsenSys respectfully submits that Boveri's claims must be dismissed with prejudice.

**ARGUMENT**

Boveri alleges that ConsenSys discriminated against him in violation of the Americans with Disabilities Act ("ADA") by not hiring him for a permanent position or independent contractor engagement. Boveri also alleges that ConsenSys discriminated against him by denying him a reasonable accommodation of a disability.[3] Finally, Boveri alleges what he characterizes as "negligent documentation practices" in violation of "42 U.S.C. 121123(d)(3)(b)."

Where, as here, there are no disputed issues of material fact, Fed. R. Civ. P. 56 mandates the entry of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). Summary judgment should be granted when the plaintiff does not "make a showing sufficient to establish the existence of an element essential" to his case and on which the plaintiff will have the burden of truth at trial. *Celotex*, 477 U.S. at 322. This standard does not require the defendant to negate the plaintiff's claim; instead, the defendant need only point to the absence of evidence in support of the plaintiff's case. *Id.* at 323; *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). By contrast, the plaintiff is required to go beyond the pleadings and to support his contentions with proper documentary evidence, and the plaintiff's evidence must be sufficient such that a jury could reasonably find in the plaintiff's favor. *Celotex*, 477 U.S. ay 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A mere scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Speculation and conjecture

---

[3] During the parties' pre-motion conference on June 25, 2021, Boveri stipulated that he is no longer pursuing any wage and hour claims. That decision is memorialized in Dkt. No. 53.

3

do not defeat a motion for summary judgment. *Traylor v. Brown*, 295 F.3d 783, 791 (7th Cir. 2002).

I. **Boveri's Claims Related to Allegations of Disability Discrimination in the Form of Failure to Hire or Failure to Promote Must be Dismissed**

    A. <u>Boveri Cannot Satisfy His *Prima Facie* Burdens Related to Claims of Disability Discrimination that Allegedly Occurred *Prior* to the Start of His Internship</u>

Under the Americans with Disabilities Act ("ADA"), a plaintiff claiming failure to hire can raise an inference of discrimination by showing that (i) he suffers from a disability; (ii) he applied for the position at issue, which was available at the time of application, and for which he was qualified; and (iii) that position was filled by a nondisabled person. *DeLuca v. Winer Indus.*, 53 F.3d 793, 797 (7th Cir. 1995). If a plaintiff without direct evidence of discrimination can prove the *prima facie* elements of an ADA claim, the *McDonnell Douglas* burden-shifting analysis applies. *Id*.

As a threshold matter, Boveri's "failure to hire" claim is defective because he did not apply for the positions that he now alleges were unlawfully denied to him. (Pl. Dep. Tr. at 71-72, 87, 105-06.)

Simply put, Boveri concedes that he applied for only one position with ConsenSys (a 2018 summer internship), and that ConsenSys offered him that very position. (R. 56.1 Statement at ¶¶ 18 and 28; Ex. 3 at 71-72, 87, 105-06, 261.) Moreover, ConsenSys even employed Boveri in that position for six months. (R. 56.1 Statement at ¶¶ 32 and 68.)

"One who does not apply for a position for which applications are required normally would not get the job in any event." *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 523 (7th Cir. 1994). Where a plaintiff did not apply for the position in question, the defendant is entitled to judgment as a matter of law. *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1045 (7th Cir. 2000); *Cady v. Miss Paige, Ltd.*, 2004 WL 1144044 at *1045 (N.D. Ill.. Apr. 30, 2004) (granting

4

employer's motion for summary judgment where plaintiff "failed to provide any evidence that he applied for and was qualified for" the positions at issue);[4] *Martino v. MCI Comms. Servs. Inc.*, 2008 WL 2157170 at *6 (N.D. Ill. May 21, 2008) (granting summary judgment where there was no evidence of, *inter alia*, plaintiff having applied for the open positions at issue); *Sembos v. Philips Components*, 376 F.3d 696, 702 (7th Cir.2004) ("An employer cannot be liable for failing to hire a person who does not apply for a job.").

Here, on March 14, Kanhirun notified Boveri of two potential opportunities: (i) a summer internship, and (ii) a "New Grads Program" meant for candidates interested in permanent full-time employment with ConsenSys.[5] (R. 56.1 Statement at ¶ 13.) Boveri considered the two opportunities, determined that he preferred to apply for an internship, and then did exactly that – without applying for any position other than the 2018 Summer Internship for which he was hired. (R. 56.1 Statement at ¶¶ 15 and 18.)

As such, there is no genuine issue of material fact in connection with Boveri's candidacy as an intern, his non-candidacy for any other position, and ConsenSys' decision to hire him as an intern: ConsenSys offered Boveri the only position for which he applied.[6] Moreover, Boveri can cite no record evidence supporting his contention that the jobs he now claims ConsenSys offered and then rescinded were available at or about the time he applied for his summer internship, or that even if they were available, he was qualified for them. And, in any event, Boveri's claim falls flat because he can present no evidence of having been offered the positions for which he

---

[4] In accordance with Judge Johnston's standing order regarding supporting memoranda and exhibits, annexed hereto as <u>Exhibit 1</u> are copies of all unreported decisions cited within the instant memorandum of law.
[5] ConsenSys also lists its available employment opportunities on its website; Boveri could have viewed career opportunities on his own, without relying on Kanhirun. (R. 56.1 Statement at ¶ 16.)
[6] In fact, contemporaneous communications prove that Boveri was quite pleased with his ConsenSys internship. (R. 56.1 Statement at ¶ 33.)

5

did not apply, and then having those offers rescinded – or even of ConsenSys considering him for such positions.

On these plain and undisputed facts, Boveri is unable to prove the second or third elements of his *prima facie* case in connection with his internship application and pre-internship interactions with ConsenSys; accordingly, his claims related to any and all pre-internship events must be dismissed with prejudice.

> B. Any Claim Alleging Disparate Treatment or a Failure to Promote *During* Boveri's Internship Must be Dismissed

It is unclear whether or not Boveri alleges that ConsenSys engaged in discrimination *during* his internship. Boveri testified that he does *not* allege that ConsenSys' decision to extend his internship for a second three-month period was an act of discrimination.

> Q: Do you believe that you were being discriminated against when ConsenSys renewed your internship or re-upped your internship effective August 2018?
>
> A: I do not allege that that was an act of discrimination, specifically. No. Specifically, I allege that it was the initial hiring process that was discriminatory.

(R. 56.1 Statement at ¶ 44; Ex. 3 at 289.)

The closest that Boveri comes to alleging that discrimination occurred during his internship is his reference to an unnamed supposed comparator. When asked to do so during his deposition, Boveri could not name a single similarly situated person who ConsenSys allegedly treated more favorably. (R. 56.1 Statement at ¶ 46; Ex. 3 at 249-50.) Instead, Boveri testified that: (i) there was a person who, according to Boveri, was hired by ConsenSys despite being told he was unqualified; (ii) Boveri does not know that person's name; (iii) Boveri does not know whether or not that unidentified person is or was disabled, or perceived by ConsenSys as

6

disabled;[7] and (iv) Boveri does not know whether or not this nameless person applied for full-time permanent employment with ConsenSys. (*Id.*)

Given the dearth of information that Boveri is able to supply about the mystery comparator, ConsenSys, an employer of about 1,000 people at the time, is in no position to identify whoever it is that Boveri refers to, if that person ever existed at all. As the plaintiff and non-moving party, Boveri bears the burden of going beyond his pleadings and pointing to some form of documentary evidence. *Here, Boveri is unable even to provide a name* – despite the requirement that he must show, among other things, that his supposed comparator "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [the comparator's] conduct or [ConsenSys'] treatment of the supposed comparator." *Schott v. Rush Univ. Med. Ctr.*, 652 Fed. Appx. 455, 459 (7th Cir., 2016) (affirming district court's grant of summary judgment based, in part, on district court's rejection of plaintiff's proffered comparators as not similarly situated). There must be "enough common factors … to allow for a meaningful comparison in order to divine whether intentional discrimination was at play." *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 559-60 (7th Cir., 2007); *McDaniel v. Progress Rail Locomotive*, 343 F.Supp.3d 753, 763 (N.D. Ill. 2018).

In this case, Boveri is unable to provide a name for his supposed comparator, and fails to establish that the two were substantially similar in any material respect – or that the nameless comparator was neither disabled nor regarded as disabled by ConsenSys. Certainly, Boveri did not apply for a permanent position with ConsenSys at any point in time. Moreover, even if all other factors established similarity between Boveri and the comparator (which they do not),

---

[7] Specifically, Boveri testified that his assertion that the unnamed alleged comparator was not disabled was based on a mere "guess," and based on Boveri's guess, the only difference between him and the unnamed individual was that the latter did not have a disability. (R. 56.1 Statement at ¶ 46; Ex. 3 at 249-50.)

7

Boveri does not allege that the mystery comparator applied for an internship, like Boveri. (R. 56.1 Statement at ¶¶ 45-46; Ex. 3 at 249-50.) If the comparator applied for a permanent position, and, as has been established, Boveri applied only for an internship, then the unidentified employee is not a comparator at all.

Based on the foregoing, even if Boveri alleges that ConsenSys wrongfully failed to promote him during his internship, he again cannot prove the second and third elements of his *prima facie* case.

      C.      Because Boveri Cannot Satisfy His *Prima Facie* Burdens, the *McDonnell Douglas* Burden-Shifting Framework is Moot

For the reasons articulated above, Boveri's "failure to hire" and potential "failure to promote" claims are incurably defective, and must be dismissed because Boveri can point to no evidence sufficient to satisfy his *prima facie* case. However, even assuming, *arguendo*, that Boveri could prove the elements of a *prima facie* case – a proposition that is unsupported by documentary evidence, logic, or even Boveri's own testimony – his claims would still be subject to dismissal under the *McDonnell Douglas* framework. Under that familiar framework, if a plaintiff can satisfy his *prima facie* burden, the defendant must then articulate a legitimate, non-discriminatory reason for taking the alleged adverse employment action(s). *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 792 (7th Cir. 1997) (affirming lower court's award of summary judgment to defendant in ADA disability discrimination action). At that point, the plaintiff "must then establish that this proffered reason is really a pretext for discrimination." *Id*.

First, ConsenSys' non-discriminatory reason for not offering Boveri a position other than a 2018 summer internship is simple: he applied only for the 2018 Summer Internship, and nothing else. ConsenSys had no reason to consider Boveri for any other position because he was not a candidate, by his own choosing. If Boveri had wanted to be considered for a permanent

8

position or an independent contractor engagement (or for any promotion or transfer during his internship), he could have applied.

Second, Boveri cannot prove with any evidence – never mind by a preponderance of the evidence – that ConsenSys' stated reasons (for not hiring him for the positions for which he did not apply) are false, or that he was, in fact, denied the positions he cites because of his disability(ies). Significantly, and separate from the central fact that Boveri did not apply or interview for the positions at issue: the record contains no evidence that ConsenSys knew of Boveri's disabilities or perceived him as disabled; in fact, Boveri testified that, pursuant to Kanhirun's advice, he purposely did not disclose his disabilities (or desire for accommodation of a disability) to any ConsenSys employee other than Kanhirun, who was not a supervisor, and had no authority in connection with hiring decisions. (R. 56.1 Statement at ¶¶ 2-4.)

As such, even if he could prove the elements of his *prima facie* case (which he cannot), Boveri's disparate treatment claims would still be subject to dismissal with prejudice.

## II. Boveri's Claim for Failure to Accommodate a Disability Must be Dismissed

To establish a *prima facie* case of failure to accommodate a disability in accordance with the ADA, a plaintiff must prove that: (i) he is a qualified individual with a disability; (ii) the employer was aware of his disability; and (iii) the employer failed to reasonably accommodate the disability. *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 747-48 (7th Cir. 2011) (affirming district court's grant of summary judgment to defendant in ADA failure to accommodate case); *Bilinsky v. American Airlines, Inc*, 2018 WL 4181481 at *4 (N.D. Ill., Aug. 31, 2018) (to "succeed on a claim for failure to accommodate, a plaintiff must show that she is a 'qualified individual' with a disability and that her employer is aware of her disability.")

To survive a motion for summary judgment, a plaintiff alleging a failure to accommodate must present the court with evidence that, if believed by a trier of fact, would establish all three

9

elements of his claim. *Id*. Significantly, in this case, Boveri can cite no evidence sufficient to establish the second or third elements of his *prima facie* case: he admits that he concealed his disability from ConsenSys, telling only Kanhirun, a non-supervisor,[8] and *despite that*, Boveri also testified that his supposed accommodation requests were "never denied." (R. 56.1 Statement at ¶ 53; Ex. 3 at 154-56.) In fact, Boveri readily concedes that he did not comply with ConsenSys' written ADA Policy, which required employees to direct their requests for accommodation to Human Resources. (R. 56.1 Statement at ¶¶ 51-54; Ex. 3 at 148-50, 153-56.)

"The standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches." *Pickett v. Chicago Transit Authority*, 2018 WL 3456497 at *12 (N.D. Ill. July 18, 2018) (dismissing employee's failure to accommodate claim where employee failed to request an accommodation of a disability); *Jovanovic v. In-Sink-Erator of Emerson Elec. Co.,* 201 F.3d 894, 899 (7th Cir. 2000) (granting employer's motion for summary judgment where, *inter alia*, employee failed to request accommodation); *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996) ("an employee has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations – a duty dictated by common sense lest a disabled employee keep his disability a secret and sue later for failure to accommodate.")

There is no evidence in the record supporting Boveri's allegation that he ever submitted a request to ConsenSys for an accommodation of a disability, either before or during his internship. Boveri claims that he disclosed his disability (specifically, narcolepsy) to his friend, Kanhirun, after Boveri applied for a summer internship; he also testified that Kanhirun was

---

[8] Asked whether he submitted any requests for accommodation to any employee other than Kanhirun, Boveri testified: "I think it would just be him," and that no one other than Kanhirun directed Boveri to "keep [his disabilities] hidden and quiet." (R. 56.1 Statement at ¶ 62; Ex. 3 at 148-50.)

10

aware of his disability as of late 2017, when Boveri informed Kanhirun that he had been homeless. (R. 56.1 Statement at ¶ 6; Ex. 3 at 45, 48-49.) Boveri testified that he did not disclose his disabilities (or the need for accommodation of a disability) to anyone other than Kanhirun. (R. 56.1 Statement at ¶ 58; Ex. 3 at 154-55.) Whatever Kanhirun knew or didn't know about Boveri's narcolepsy is immaterial, as Kanhirun was not a supervisor and had no authority to make hiring decisions or, for that matter, to grant, approve, or even review requests for accommodation. Likewise, the record contains no documentary evidence that Kanhirun alerted any other ConsenSys employee – and *certainly* no supervisor or human resources professional – to the fact of Boveri's disability; in fact, Boveri testified that Kanhirun instructed Boveri to not divulge the fact of his disability or need for accommodation. (R. 56.1 Statement at ¶ 62; Ex. 3 at 148-50.)

Simply put, an employee who lacks the authority to hire, terminate, promote, discipline, or transfer other employees is not a statutory supervisor. *Prindle v. TNT Logistics of North America*, 331 F. Supp. 2d 739 (W.D.Wis. 2004) (employee was not a statutory supervisor, and thus defendant was not vicariously liable, where he "did not have the authority to hire, fire, promote, demote or transfer employees."); *Keaney v. Camcar Textron*, 2002 WL 449016 at *2 (N.D. Ill., March 22, 2002) (employee "was without the authority to hire, fire, promote, transfer, or discipline other employees, and so was not a supervisor for purposes of imputing liability to defendant").

Accordingly, as a non-supervisor, Kanhirun is not and never was "ConsenSys," and ConsenSys could not have denied or even considered an accommodation of a disability if it was not on notice of Boveri's disabilities and/or his supposed backdoor requests for accommodation, which, according to Boveri, were directed only to Kanhirun. (R. 56.1 Statement at ¶ 58; Ex. 3 at

11

147-48, 154-55.) Boveri used Kanhirun to go around ConsenSys' established policies for disability accommodation; he cannot now use Kanhirun as a supposed agent of ConsenSys to try to prove that he put the company on legal notice of Boveri's disabilities, when Kanhirun was never a supervisor.

Even within Boveri's version of events – where he asked his friend with no authority to grant accommodation requests, and further ignored the ADA Policy by helping himself to unauthorized paid time off without the approval of human resources – he still concedes that ConsenSys did not deny him any accommodation of a disability during his internship. (R. 56.1 Statement at ¶¶ 53, 64.)

The inescapable fact of the matter is that if Boveri wanted an accommodation of a disability, he could have requested one in a manner consistent with ConsenSys' ADA Policy. In fact, the Seventh Circuit in *Beck*, 75 F. 3d at 1134, warned of the duplicitous actions that Boveri would adopt more than two decades later: without a duty to put his employer on notice of a disability and need for accommodation, "a disabled employee [could] keep his disability a secret and sue later for failure to accommodate." Having intentionally failed to request an accommodation or otherwise put ConsenSys on notice of his disability, Boveri is in no position to complain about a denial of the accommodations he did not request, for a disability that he did not disclose to ConsenSys.

As such, Boveri's "failure to accommodate" claim must be dismissed with prejudice.

**III. Boveri's Claim for "Negligent Documentation Practices" Must be Dismissed Because it is Not a Cognizable Claim under Any Relevant Statute, Including "42 U.S.C. 121123(d)(3)(b)," Which Is Not an Actual Section of the U.S. Code**

In his Complaint, Boveri alleges "negligent documentation practices" under "42 U.S.C. 121123(d)(3)(b)." (Complaint, 11.3.) However, the U.S. Code does not contain a Section 121123. It is possible that Boveri meant to allege such a claim under 42 U.S.C. 12112(d)(3)(B); even so, Boveri's claim would still be nonsense.

42 U.S.C. 12112(d)(3) pertains to employer-mandated *medical examinations*, stating that a covered employer "may condition an offer of employment on the results of such examination if … information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record … ." 42 U.S.C. 12112(d)(3)(B).

Here, ConsenSys did not request or require that Boveri undergo a medical examination as a condition of employment or for any other purpose, and Boveri does not allege otherwise. Moreover, because Boveri purposely avoided disclosing his disability to anyone other than Kanhirun, ConsenSys never requested nor received medical information from Boveri. And, in any event, ConsenSys produced Boveri's personnel file in the course of discovery in this case, which similarly contains no reference to or mention of any medical or mental health condition. Accordingly, this claim must be dismissed with prejudice.

## CONCLUSION

ConsenSys respectfully requests that the Court grant its motion for summary judgment in its entirety, award its costs and such other further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: New York, New York<br>August 23, 2021 | DAVIS WRIGHT TREMAINE LLP<br><br>By:   /s/ Scott Cooper_____<br>      Laura Sack (*admitted pro hac vice*)<br>      Scott Cooper (*admitted pro hac vice*)<br><br>1251 Avenue of the Americas, 21st Floor<br>New York, New York 10021<br>(212) 489-8230<br>Attorneys for Defendant<br>laurasack@dwt.com<br>scottcooper@dwt.com<br><br>Kerry Saltzman<br>WILLIAMS, BAX & SALTZMAN, P.C.<br>221 N. LaSalle St., Ste. 3700<br>Chicago, IL 60601<br>saltzman@wbs-law.com |

14