IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| David Boveri,<br><br>      Plaintiff,<br><br>  v.<br><br>ConsenSys, Inc.,<br><br>      Defendant. | Case No. 3:19-cv-50226<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Boveri brings this employment discrimination action *pro se* against ConsenSys, Inc., for alleged violations of the Americans with Disabilities Act. Dkt. 1, ¶ 9. Before the Court is ConsenSys' motion for summary judgment. For the reasons below, that motion [54] is granted.

**I.  Legal Standard**

On summary judgment, the movant has the burden of showing that "no genuine dispute as to any material fact" exists and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that might affect the outcome of the suit. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). No "genuine" dispute exists if a court would be required to grant a Rule 50 motion at trial. *Id.* at 250–51. The Court must construe the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). "Summary judgment is only warranted if, after doing so, [the Court] determine[s] that no jury

1

could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto, Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

As an initial matter, the Court notes that Boveri did not respond to the motion for summary judgment. Because the moving party bears the burden to establish its entitlement to judgment as a matter of law, however, Boveri's failure to file a responsive brief is not dispositive. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Of greater importance, Boveri also failed to respond to ConsenSys' Local Rule 56.1 statement of material fact, even after defense counsel supplied the necessary notice to unrepresented parties in compliance with Local Rule 56.2. Local Rule 56.1(b)(2) requires that the party opposing summary judgment respond to the movant's statement of material facts. Local Rule 56.1(e) clearly lays out all the requirements for the nonmovant's response to the proffered material facts. The response must include citations to record evidence supporting the fact or the existence of a dispute of fact. Local Rule 56.1(e)(3). If the response does not properly cite to evidentiary material, then the fact is admitted. *Id*. If that wasn't clear enough, the Local Rule 56.2 notice to unrepresented litigants clearly states (in bold): "If you do not respond to a fact asserted by the defendant, the judge may decide that you have admitted that the fact is true." Local Rule 56.2; Dkt. 58, at 3 (noticing Boveri of the same). The Court also explained all of this to Boveri during the pre-filing conference. Dkt. 53.

And as the Seventh Circuit has explained, "the district court is within its discretion to strictly enforce compliance with its local rules regarding summary

judgment motions." *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 359–60 (7th Cir. 2009). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Thus, because Boveri failed to respond at all to ConsenSys' Local Rule 56.1 statement of material facts, the Court deems those statements as true for purposes of the pending motion, as long as they are themselves supported by evidence in the record.

## II. Background

For the reasons explained above, the following factual background is taken from ConsenSys' statement of material facts. In March 2018, Plaintiff David Boveri applied for a summer internship at ConsenSys, with the help of his long-time friend Kel Kanhirun. Other opportunities were available and listed on the company website, but Boveri chose to apply for the internship. That is the only position that Boveri ever applied for at ConsenSys. On April 2, Lianna Newman sent Boveri an email inviting him to interview for the summer internship position. On May 21, the ConsenSys intern coordinator, Elizabeth Gottlieb, emailed Boveri to setup a phone call regarding the internship. Two days later, Gottlieb then told Boveri that ConsenSys was offering him the position and conveyed the terms of the offer. Boveri took notes of the conversation and wrote that the internship would be from June 6, 2018, until August 17, 2018, and would pay him forty dollars per hour, for forty hours per week. The offer was then memorialized into a written offer the next day,

which was signed by the company CEO. Boveri accepted the offer and began working as an intern on June 6, 2018.

Kanhirun then engaged in a series of conversations with Boveri regarding Boveri's future employment at ConsenSys. Those conversations included what Boveri considered to be offers of future employment, notwithstanding that his friend Kanhirun had no hiring authority whatsoever. Nonetheless, the record contains no evidence that Boveri ever applied for any positions other than the internship. Even though Boveri received a formal offer letter for his internship position, which was signed by the CEO, dkt. 56-11, the record contains no such offer letter for any other position (or any evidence that he applied for any other position). Still, he somehow believes he was offered a position. That unreasonable belief appears to be based solely on conversations he had with his friend, Kanhirun. In his deposition though, Boveri conceded that he has not worked for any company, other than his own LLC, on a full-time basis and may just not be familiar with what an offer of full-time employment looks like. Dkt. 56-3, at 50 (Boveri Dep. 119:5–21).

Boveri's believes his "offer" was then rescinded because of his disabilities. He claimed to have narcolepsy, other sleep disorders, postural orthostatic tachycardia syndrome, and chronic sinus infections. Boveri admits, though, that he never told Human Resources about those conditions. Indeed, he appears to have only told Kanhirun, who advised him to keep his disability quiet. Boveri believed Lianna Newman had rescinded a previous offer of permanent employment. He believed it was due to his disability (he indicated that he permitted Kanhirun to tell Lianna

4

Newman about the disabilities, though the record contains no admissible evidence to establish that contention). She, however, had no authority to hire, discipline, or terminate employees. She was never a supervisor, notwithstanding that she interviewed him during the internship hiring process. Nonetheless, no evidence of an offer of employment exists in the record. And as noted above, he never told the company's HR team about the disabilities anyway, even though he knew HR existed. Dkt. 56, ¶ 61 ("Boveri understood that the People team was the same as Human Resources. Boveri testified: 'Does "People" overlap with HR? At the time, I assumed yes.'").

    Even though his internship was set to conclude in August, it was extended until December 13, 2018. Beginning in late November and running through early December, he decided to take some paid leave to recuperate from surgery related to one of his disabilities. Because he was an intern, however, he did not have the same benefits as full-time employees and was not entitled paid time off. Dkt. 56-11, at 2 (explaining "nor shall you be eligible for paid time off except in accordance with applicable law"). Furthermore, he never requested the time off, was never granted it, and instead claimed that "all you had to do was put it on your calendar." *Id.* ¶ 54. So, he took the time off. Even though he was not working full time, he continued to complete his time sheets as if he continued to work forty hours per week.

    On December 6, 2018, a week before Boveri's internship was scheduled to conclude, ConsenSys conducted a reduction in force. In total, the company reduced

its workforce by thirteen percent. Boveri's name was included in that reduction, and his employment was terminated. This suit followed.

### III. Analysis

Plaintiff David Boveri alleges violations of the Americans with Disabilities Act (ADA) and the Fair Labor Standards Act (FLSA). Dkt. 1. At the Court's summary judgment pre-filing conference, however, he stipulated that he would not be proceeding with his FLSA claim. Dkt. 53. Invoking the ADA, Boveri alleged ConsenSys failed to hire him for a full-time position because of his disability: "This action indicates that Mr. Boveri, who was sufficiently qualified for a full-time position, was willfully and intentionally treated differently than an unqualified candidate who did not have a disability." Dkt. 1, ¶ 11.1. Boveri further appears to allege that ConsenSys failed to accommodate his disabilities.[1] *Id.* ¶ 11.4.

The ADA proscribes employment discrimination "against a qualified individual on the basis of disability in regard to the job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §

---

[1] ConsenSys' motion for summary judgment assumed that Boveri also brought a claim under 42 U.S.C. § 12112(d)(3)(B). Dkt. 55, at 14. Although diligence in briefing is always appreciated and the Court certainly understands why ConsenSys was cautious and addressed the issue, the Court does not read Boveri's complaint to allege a claim under that section of the statute. Nor does that section appear to create a standalone claim. Rather, Boveri merely cited a similar (possibly mistyped) statute to support the allegation that ConsenSys' documentation practices are insufficient. He cited 42 U.S.C. § 121123(d)(3)(B), which does not exist. In the end, however, the Court is without the aid of any briefing on Boveri's part to illuminate his argument. The Court will not create a claim where none appears to exist. Furthermore, that section of the Code (assuming the Court is correct on what section Boveri intended to cite) contemplates medical examinations of candidates for employment, and the record is void of any evidence that Boveri actually applied for any job other than his internship.

12112(a). Boveri's complaint can be read to allege a failure to hire and failure to accommodate claims. Neither have any merit.

First, ConsenSys argues, "Having intentionally failed to request an accommodation or otherwise put ConsenSys on notice of his disability, Boveri is in no position to complain about a denial of the accommodations he did not request, for a disability that he did not disclose to ConsenSys." Dkt. 55, at 13. To establish a failure to accommodate claim under the ADA, plaintiffs must show that they (1) are a qualified individual with a disability, (2) the employer was aware of that disability, and (3) the employer failed to reasonably accommodate the disability. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015). Here, Boveri cannot establish the second element—that ConsenSys was aware of his disability. As explained above, the record establishes that he told his friend and co-worker about his medical conditions. That friend offered the terrible advice that he should conceal the conditions from the company, and Boveri complied with that terrible advice. The undisputed facts show that he did not inform Human Resources, or anyone other than his friend, about his claimed disabilities. Beyond ConsenSys' statements of material fact, which Boveri did not dispute, he testified at his deposition that Kanhirun (his friend) was the person he talked to about his needs. Dkt. 56-3, at 67. Even then, he did not provide any supporting documentation. *Id.* at 68. Instead, he testified, "I was told to keep it hidden and quiet. Q. And who told you that? A: Kevin Kanhirun. After discussions with Lianna Newman, he told me that."). Neither of those individuals were supervisors or

members of HR. Nor did Boveri submit any admissible evidence that Kanhirun actually communicated with Newman about Boveri's needs.

And ConsenSys' policies reflect the need to inform Human Resources, as opposed to an employee's nonsupervisory friend. The policy provides direction: "If you are currently disabled or become disabled during your employment and are in need of a reasonable accommodation, you should contact your HR Business Partner to assist you with evaluating reasonable accommodations that may enable you to perform the essential functions of your job." Dkt. 56, ¶ 51.

"[T]he standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 608 (7th Cir. 2012). Because Boveri undisputedly did not tell Human Resources, or even a person with supervisory authority, about his conditions, his reasonable accommodation claim must fail. The Court recognizes that these required notifications are likely more difficult in a decentralized company like ConsenSys. But the employee policy clearly indicates that Boveri was required to inform HR, and he had no reason to think otherwise. In fact, in his deposition, he acknowledged that he was aware of the policy. Dkt. 56-3, at 56. Still, the record is void of any evidence that he even attempted to inform anyone that worked for HR or had HR duties. On the contrary, the evidence establishes that he followed his friend's advice to keep his alleged need for accommodation hidden. Thus, because he cannot establish a necessary element of his reasonable accommodation claim, ConsenSys is entitled to judgment as a matter of law.

Second, Boveri claims he was discriminated against on the basis of his disabilities when the company failed to hire him to a permanent, full-time position. To establish a violation of the ADA's prohibition on discrimination, a plaintiff must prove (1) that he is disabled, (2) he is qualified to perform the essential functions of the position with or without reasonable accommodations, and (3) a causal link exists between his disability and the adverse employment decision. *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016). Assuming Boveri was disabled under the meaning of the ADA, his claim still fails because he cannot establish either that an adverse employment decision occurred, or that it would have been causally related to his disability. The reason is simple: he never applied for a full-time position, and he didn't tell HR about his disability anyway.

Boveri first applied for an internship with ConsenSys. He interviewed for, and was offered, that position. The offer included a formal letter signed by the company CEO. Notwithstanding this formal process, Boveri unreasonably believes he was later offered a full-time position, even though that later purported offer did not include an offer letter, or any communication with any supervisor or a person with an HR function. Nor does the record reflect that he ever applied for any position listed on the company's website. In other words, Boveri claims that ConsenSys discriminated against him in the hiring process for a job to which he never applied, never spoke to HR or a supervisor about, was never offered, never interviewed for, and that the discrimination was based on a disability that he purposely kept hidden. These facts are undisputed, both on a review of the evidence

9

and because Boveri failed to respond to ConsenSys' Local Rule 56.1 statement of material facts. And on these facts, Boveri's claim must fail. He cannot establish an adverse employment action, or any employment action because he never applied for a full-time job. *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 523 (7th Cir. 1994). No facts exist in the record to establish that an application would be futile. And Boveri cannot merely rely on communications with his long-time friend and coworker to establish that he applied for a position. He submitted no evidence showing that Kanhirun had supervisory or HR job duties. On the contrary, the evidence shows the opposite. The same goes for Lianna Newman. And even if an informal conversation with a friend were enough to constitute a job application at ConsenSys, Boveri still would be unable to establish a causal link between the failure to hire and his disability because he admittedly concealed his conditions from the company. Dkt. 56-3, at 68 (explaining that he kept his disability quiet after speaking with his friend and co-worker Kel Kanhirun).

In the end, the evidence before the Court tells a different story. The evidence establishes that Boveri was offered a well-paid internship, which was extended several more months. That internship came to an end one week early because of a sizeable reduction in force (13% of the workforce). *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 574 (7th Cir. 2003) (reductions in force are legitimate, nondiscriminatory justifications that shift the burden to the plaintiff to show pretext). Because of that reduction in force, Boveri's employment at ConsenSys ended on December 6, 2018. As part of that termination, Boveri was given a $5,000

10

severance. That is the end of the story, at least that is the end of the story told by the evidence in the record.

The Court understands that working at a company with a decentralized structure, like ConsenSys, may be confusing. Differentiating between members of management, human resources, and everyone else might be problematic or even frustrating. But that does not obviate the requirement that plaintiffs must present the Court with evidence, whether that be by deposing witnesses, filing affidavits, or pursuing document production in discovery. At bottom, summary judgment is the "put up or shut" phase of litigation. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 876 (7th Cir. 2021). Here, Boveri has made no effort to supply this Court with his side of the story. He cannot utterly fail in his duty to prosecute his claims while simultaneously ringing the bell of injustice. Either because of his failure to present evidence, or because he is simply wrong, his claims must fail. On the evidence presented to the Court, ConsenSys is entitled to judgment as a matter of law.

## IV. Conclusion

For these reasons, the Court grants ConsenSys' motion for summary judgment [54]. Civil case terminated.

Date: February 4, 2022

_____
Honorable Iain D. Johnston
United States District Judge